# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

S.A.P., *et al.*,

     Plaintiffs,

v.

WILLIAM BARR, Attorney General, *et al.*,

     Defendants.

Civil Action No. 1:19-cv-3549

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rules of Civil Procedure 12(c) and 56, Defendants hereby oppose Plaintiffs' Motion for Summary Judgment (ECF No. 47) and cross-move this Court for summary judgment. The grounds for this opposition and motion are set forth in the accompanying memorandum of points and authorities. A proposed order is attached.

     Respectfully submitted,

     JEFFREY BOSSERT CLARK
     Acting Assistant Attorney General

     WILLIAM C. PEACHEY
     Director

     EREZ REUVENI
     Assistant Director

     *s/Lauren C. Bingham*
     LAUREN C. BINGHAM
     Senior Litigation Counsel
     U.S. Department of Justice, Civil Division
     Office of Immigration Litigation
     P.O. Box 868, Ben Franklin Station
     Washington, DC 20044

Tel: (202) 616-4458
Email: <u>Lauren.C.Bingham@usdoj.gov</u>

CHRISTINA P. GREER
Senior Litigation Counsel

SARAH K. PERGOLIZZI
Trial Attorney

Dated: October 2, 2020                    *Attorneys for Defendants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION ................................................................................................................... 1

LEGAL BACKGROUND ........................................................................................................ 3

    I.      Expedited Removal and Credible-Fear Screening. .................................................. 3

    II.     U.S. Asylum Law. ...................................................................................................... 4

        A.     Attorney General's Authority over Immigration Law. ............................... 4

        B.     "Particular Social Group." ........................................................................... 5

        C.     *L-E-A- II* and USCIS Guidance and Training Materials Following *L-E-A- II.* ..................................................................................................... 6

PROCEDURAL BACKGROUND.......................................................................................... 9

STANDARD OF REVIEW .................................................................................................. 11

ARGUMENT ........................................................................................................................ 11

    I.      This Court Lacks Jurisdiction Over this Case...................................................... 11

    II.     Plaintiffs Lack Standing Because They Cannot Demonstrate Causation or Redressability.......................................................................................................... 18

    III.    USCIS's Guidance and Training Materials Notifying Asylum Officers of the Attorney General's Decision in *L-E-A- II* is lawful. ...................................... 21

        A.     *L-E-A- II* is entitled to deference under *Chevron* because it reiterates well-established Board precedent interpreting the term "particular social group" as requiring that proposed groups be socially distinct within the society in question. .............................................................. 22

        B.     To the extent prior court of appeals case law is read as establishing that family groups are per se cognizable, *L-E-A- II* properly invoked *Brand X* and thus should receive deference under *Chevron*. ................... 26

        C.     USCIS's Guidance on *L-E-A- II* is not arbitrary and capricious because it tracks *L-E-A- II* and brings the analysis of family-based groups in line with Board precedent on the social distinction requirement. .............................................................................................. 36

    IV.    Any Relief Must Be Sharply Limited. .................................................................. 40

CONCLUSION ................................................................................................................... 45

# TABLE OF AUTHORITIES

## Cases

*Aldana-Ramos v. Holder*,
  757 F.3d 9 (1st Cir. 2014) ................................................................... 30

*Al-Ghorbani v. Holder*,
  585 F.3d 980 (6th Cir. 2009) ................................................... 23, 26, 30

*Am. Bioscience, Inc. v. Thompson*,
  269 F.3d 1077 (D.C. Cir. 2001) ............................................................ 11

*Am. Immigration Lawyers Ass'n v. Reno*,
  18 F. Supp. 2d 38 (D.D.C. 1998) .......................................................... 14

*Am. Immigration Lawyers Ass'n v. Reno*,
  199 F.3d 1352 (D.C. Cir. 2000) ..................................................... 17, 44

*Ark Initiative v. Tidwell*,
  749 F.3d 1071 (D.C. Cir. 2014) ............................................................ 18

*Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Reserve Sys.*,
  745 F.2d 677 (D.C. Cir. 1984) .............................................................. 37

*Ayele v. Holder*,
  564 F.3d 862 (7th Cir. 2009) ................................................................ 30

*Bernal-Rendon v. Gonzales*,
  419 F.3d 877 (8th Cir. 2005) ................................................................ 30

*Castillo-Arias v. U.S. Atty. Gen.*,
  446 F.3d 1190 (11th Cir. 2006) ............................................................ 35

*Chesapeake Climate Action Network v. Exp.-Imp. Bank of the U.S.*,
  78 F. Supp. 3d 208 (D.D.C. 2015) ....................................................... 19

Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,
  *467 U.S. 837 (1984)* ............................................................... 22, 27, 28

*Crespin-Valladares v. Holder*,
  632 F.3d 117 (4th Cir. 2011) .......................................................... 30, 32

*Delta Constr. Co. v. EPA*,
  783 F.3d 1291 (D.C. Cir. 2015) ............................................................ 20

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
  140 S. Ct. 1891 (2020) .......................................................................... 36

*Dep't of Homeland Sec. v. Thuraissigiam*,
    140 S. Ct. 1959 (2020) .................................................................... 18

*Dugdale v. U.S. Customs and Border Prot.*,
    88 F. Supp. 3d 1 (D.D.C. 2015) ..................................................... 14

*F.C.C. v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009) ........................................................................ 36

*Fatin v. INS*,
    12 F.3d 1233 (3d Cir. 1993) ...................................................... 33, 35

*Flores Rios v. Lynch*,
    807 F.3d 1123 (9th Cir. 2015) ............................................. 30, 31, 32

*Garay Reyes v. Lynch*,
    842 F.3d 1125 (9th Cir. 2016) .......................................................... 6

*Gatimi v. Holder*,
    578 F.3d 611 (7th Cir. 2009) .......................................................... 31

*Gebremichael v. INS*,
    10 F.3d 28 (1st Cir. 1993) ......................................................... 30, 31

*Gill v. Whitford*,
    138 S. Ct. 1916 (2018) ................................................................... 41

Gonzales v. Thomas,
    *547 U.S. 183 (2006)* ............................................................... 22, 32

*Gonzalez Ruano v. Barr*,
    922 F.3d 346 (7th Cir. 2019) .......................................................... 31

*Gonzalez v. U.S. Att'y Gen.*,
    820 F.3d 399 (11th Cir. 2016) .......................................................... 6

*Grace v. Barr*,
    965 F.3d 883 (D.C. Cir. 2020) .............................................. passim

*Grace v. Whitaker*,
    344 F. Supp. 3d 96 (D.D.C. 2018) ................................................ 45

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*,
    527 U.S. 308 (1999) ........................................................................ 41

*Henriquez-Rivas v. Holder*,
    707 F.3d 1081 (9th Cir. 2013) ........................................................ 34

*Hernandez-de la Cruz v. Lynch*,
    819 F.3d 784 (5th Cir. 2016) ................................................................... 6

*Iliev v. INS*,
    127 F.3d 638 (7th Cir. 1997) ........................................................... 30, 31

*INS v. Aguirre-Aguirre*,
    526 U.S. 415 (1999)............................................................................... 5

*INS v. Cardoza-Fonseca*,
    480 U.S. 421 (1987)............................................................................... 5

*Judulang v. Holder*,
    565 U.S. 42 (2011)............................................................................... 36

*Kaspersky Lab, Inc. v. U.S. Dep't of Homeland Sec.*,
    311 F. Supp. 3d 187 (D.D.C. 2018) ..................................................... 20

*L.M.-M. v. Cuccinelli*,
    442 F. Supp. 3d 1 (D.D.C. 2020) ......................................... 14, 42, 43, 44

*Lopez-Monroy v. U.S. Dep't of Homeland Sec.*,
    751 F. App'x 303 (3d Cir. 2018) ......................................................... 30

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)............................................................................. 18

*M.M.V. v. Barr*,
    — F. Supp. 3d —, 2020 WL 1984309 (D.D.C. Apr. 27, 2020)....................... 14

*Madsen v. Women's Health Ctr., Inc.*,
    512 U.S. 753 (1994)............................................................................. 41

*Make the Rd. New York v. Wolf*,
    962 F.3d 612 (D.C. Cir. 2020) ............................................................. 12

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010)............................................................................. 42

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)............................................................................... 36

*Nat'l Auto. Dealers Ass'n v. F.T.C.*,
    864 F. Supp. 2d 65 (D.D.C. 2012) ....................................................... 11

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
    545 U.S. 967 (2005)................................................................... 8, 27, 28

*Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*,
    145 F.3d 1399 (D.C. Cir. 1998) ......................................................................... 42

*Neb. Dep't of Health & Human Servs. v. Dep't of Health & Human Servs.*,
    435 F.3d 326 (D.C. Cir. 2006) ........................................................................... 41

*Negusie v. Holder*,
    555 U.S. 511 (2009) .............................................................................. 5, 22, 33

*Ngugi v. Lynch*,
    826 F.3d 1132 (8th Cir. 2016) ............................................................................. 6

*O.A. v. Trump*,
    404 F. Supp. 3d 109 (D.D.C. 2019) .............................................................. 42, 43

*Oliva v. Lynch*,
    807 F.3d 53 (4th Cir. 2015) ............................................................................ 6, 32

*Paiz-Morales v. Lynch*,
    795 F.3d 238 (1st Cir. 2015) ........................................................................... 6, 31

*Paloka v. Holder*,
    762 F.3d 191 (2d Cir. 2014) ................................................................................ 6

*Patchak v. Zinke*,
    138 S. Ct. 897 (2018) ....................................................................................... 12

*Pena Oseguera v. Barr*,
    936 F.3d 249 (5th Cir. 2019) ............................................................................. 30

*Petit v. U.S. Dep't of Educ.*,
    675 F.3d 769 (D.C. Cir. 2012) ........................................................................... 27

*Quiroz Parada v. Sessions*,
    902 F.3d 901 (9th Cir. 2018) ............................................................................. 32

*Renal Physicians Ass'n v. U.S. Dep't of Health and Human Servs.*,
    489 F.3d 1267 (D.C. Cir. 2007) .................................................................... 19, 20

*Rodas-Orellana v. Holder*,
    780 F.3d 982 (10th Cir. 2015) ............................................................................. 6

*S.E.R.L. v. Att'y Gen. U.S.*,
    894 F.3d 535 (3d Cir. 2018) ................................................................................ 6

*Sanchez-Trujillo v. INS*,
    801 F.2d 1571 (9th Cir. 1986) ...................................................................... 30, 32

*Seka v. Sessions*,
    714 F. App'x 901 (10th Cir. 2017) ................................................................. 30

*Shays v. Fed. Election Comm'n*,
    414 F.3d 76 (D.C. Cir. 2005) ...................................................................... 43

*Sosa-Perez v. Sessions*,
    884 F.3d 74 (1st Cir. 2018) ........................................................................ 30

*Thomas v. Gonzales*,
    409 F.3d 1177 (9th Cir. 2005) .................................................................. 31

*Torres v. Mukasey*,
    551 F.3d 616 (7th Cir. 2008) .................................................................... 31

*Trump v. Hawaii*,
    138 S. Ct. 2392 (2018) .............................................................................. 41

*Va. Soc'y for Human Life, Inc. v. Fed. Election Comm'n*,
    263 F.3d 379 (4th Cir. 2001) .................................................................... 41

*Velasquez v. Sessions*,
    866 F.3d 188 (4th Cir. 2017) .................................................................... 35

*Vijender v. Wolf*,
    2020 WL 1935556 (D.D.C. Apr. 22, 2020) .............................................. 14

*Vumi v. Gonzales*,
    502 F.3d 150 (2d Cir. 2007) ...................................................................... 30

*W.G.A. v. Sessions*,
    900 F.3d 957 (7th Cir. 2018) ................................................................ 6, 22

*West v. Lynch*,
    845 F.3d 1228 (D.C. Cir. 2017) ................................................................ 20

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ...................................................................................... 44

*Zaldana Menijar v. Lynch*,
    812 F.3d 491 (6th Cir. 2015) ...................................................................... 6

**Administrative Decisions**

*Matter of A-B-*,
    27 I. & N. Dec. 316 (A.G. 2018) .......................................................... 8, 15

*Matter of Acosta*,
    19 I. & N. Dec. 211 (BIA 1985) ....................................................... passim

*Matter of C-A-*,
    23 I. & N. Dec. 951 (BIA 2006) ........................................................ 32

*Matter of H-*,
    21 I. & N. Dec. 337 (BIA 1996) ....................................... 23, 24, 26

*Matter of L-E-A-*,
    27 I. & N. Dec. 40 (BIA 2017) ................................................ passim

*Matter of L-E-A-*,
    27 I. & N. Dec. 494 (A.G. 2018) ................................................... 7

*Matter of L-E-A-*,
    27 I. & N. Dec. 581 (A.G. 2019) ............................................. passim

*Matter of McMullen*,
    17 I. & N. Dec. 542 (BIA 1980) ................................................... 6

*Matter of M-E-V-G-*,
    26 I. & N. Dec. 227 (BIA 2014) ............................................. passim

*Matter of Mogharrabi*,
    19 I. & N. Dec. 439 (BIA 1987) ................................................... 6

*Matter of S-E-G-*,
    24 I. & N. Dec. 579 (BIA 2008) ................................................... 8

*Matter of W-G-R-*,
    26 I. & N. Dec. 208 (BIA 2014) ................................................... 6

**Federal Statutes**

28 U.S.C. § 1331 ........................................................................... 12

5 U.S.C. § 702 .............................................................................. 44

5 U.S.C. § 703 .............................................................................. 42

5 U.S.C. § 706(2) .......................................................................... 41

8 U.S.C. § 1101(a)(42) ................................................................ 1, 5

8 U.S.C. § 1103(a) ................................................................... 17, 19

8 U.S.C. § 1103(a)(1) ............................................................. passim

8 U.S.C. § 1103(a)(2) ...................................................... 9, 16, 17, 19

8 U.S.C. § 1103(a)(3) .......................................................... 9, 16, 17

8 U.S.C. § 1103(g) ............................................................................................................ 5

8 U.S.C. § 1103(g)(2) ..................................................................................................... 5, 19

8 U.S.C. § 1158 ......................................................................................................... passim

8 U.S.C. § 1158(b) ............................................................................................................ 5

8 U.S.C. § 1158(b)(1)(A) .................................................................................................. 5

8 U.S.C. § 1158(b)(1)(B)(i) ............................................................................................... 5

8 U.S.C. § 1182(a)(6)(C) .................................................................................................. 3

8 U.S.C. § 1182(a)(7) ....................................................................................................... 3

8 U.S.C. § 1225 ............................................................................................................... 15

8 U.S.C. § 1225(b) .......................................................................................... 12, 15, 16, 45

8 U.S.C. § 1225(b)(1) ................................................................................................. passim

8 U.S.C. § 1225(b)(1)(A)(i) .............................................................................................. 3

8 U.S.C. § 1225(b)(1)(A)(ii) ............................................................................................. 3

8 U.S.C. § 1225(b)(1)(B) ............................................................................................ 13, 45

8 U.S.C. § 1225(b)(1)(B)(ii) ............................................................................................. 4

8 U.S.C. § 1225(b)(1)(B)(iii)(I) ........................................................................................ 4

8 U.S.C. § 1225(b)(1)(B)(iii)(III) ................................................................................. 4, 20

8 U.S.C. § 1225(b)(1)(B)(v) .......................................................................................... 2, 4

8 U.S.C. § 1225(b)(1)(C) .................................................................................................. 4

8 U.S.C. § 1225(b)(1)(E) ................................................................................................ 17

8 U.S.C. § 1225(b)(1)(E)(i) ............................................................................................... 9

8 U.S.C. § 1229a ............................................................................................................... 4

8 U.S.C. § 1252(a)(1) ........................................................................................................ 4

8 U.S.C. § 1252(a)(2) ...................................................................................................... 45

8 U.S.C. § 1252(a)(2)(A) ........................................................................................... 11, 43

8 U.S.C. § 1252(a)(2)(A)(i) ............................................................................... 12, 45

8 U.S.C. § 1252(a)(2)(A)(ii) .............................................................................. 12, 45

8 U.S.C. § 1252(a)(2)(A)(iii) ................................................................... 4, 12, 13, 45

8 U.S.C. § 1252(a)(2)(A)(iv) ............................................................................. 12, 45

8 U.S.C. § 1252(e) .................................................................................................... 45

8 U.S.C. § 1252(e)(1) ........................................................................................... 3, 43

8 U.S.C. § 1252(e)(1)(B) ..................................................................................... 44, 45

8 U.S.C. § 1252(e)(2) ............................................................................................ 4, 12

8 U.S.C. § 1252(e)(3) ........................................................................................ passim

8 U.S.C. § 1252(e)(3)(A) ..................................................................................... 12, 45

8 U.S.C. § 1252(e)(3)(A)(ii) ..................................................................................... 43

8 U.S.C. § 1252(e)(3)(B) ............................................................................... 13, 14, 18

8 U.S.C. § 1252(f) .............................................................................................. 43, 44

## Federal Regulations

8 C.F.R. § 1003.1(d)(1) ............................................................................................. 5

8 C.F.R. § 1003.1(g) ......................................................................................... passim

8 C.F.R. § 1003.1(h) ........................................................................................... 5, 17

8 C.F.R. § 1003.1(h)(1)(i) ......................................................................................... 7

8 C.F.R. § 1003.42(f) ................................................................................................ 4

8 C.F.R. § 103.10(b) .......................................................................... 9, 17, 20, 21

8 C.F.R. § 103.3(c) ............................................................................................ 19, 20

8 C.F.R. § 1208.30(g)(2) ......................................................................................... 20

8 C.F.R. § 1208.30(g)(2)(iv)(A) ............................................................................... 4

8 C.F.R. § 208.1(b) .................................................................................................. 17

8 C.F.R. § 208.30(e)(3) ............................................................................................. 3

8 C.F.R. § 208.30(e)(4) ........................................................................................ 40

8 C.F.R. § 208.30(f) .............................................................................................. 4

8 C.F.R. § 235.3(b)(4) ........................................................................................... 3

8 C.F.R. § 235.6(a)(1)(ii) ...................................................................................... 4

**Miscellaneous**

Appellants' Petition for Rehearing En Banc, *Grace v. Barr*,
    965 F.3d 883 (D.C. Cir. 2020) (No. 19-5013) ................................................. 16

Conference of Plenipotentiaries on the Status of Refugees and Stateless Persons,
    U.N. Doc. A/Conf.2/108/Rev.1 (July 25, 1951) *available at*
    https://www.refworld.org/docid/40a8a7394.html ........................................... 34

Daniel Steinbock, Interpreting the Refugee Convention,
    45 U.C.L.A. L. Rev. 733 (1998) .................................................................... 34

H.R. Rep. No. 104-828 (1996) (Conf. Rep.) ..................................................... 13, 16

H.R. Rep. No. 1980, 79th Cong., 2d Sess. 42 (1946) ........................................... 42

S. Rep. No. 752, 79th Cong., 1st Sess. 26 (1945) ................................................. 42

UNHCR Handbook on Procedures and Criteria for Determining Refugee Status (1979) ........... 34

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

S.A.P., *et al.*,

      Plaintiffs,

v.

WILLIAM BARR, Attorney General, *et al.*,

      Defendants.

Civil Action No. 1:19-cv-3549

**<u>MEMORANDUM IN SUPPORT OF DEFENDANTS' OPPOSITION</u>**
**<u>TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT,</u>**
**<u>AND CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

## INTRODUCTION

The Court should grant Defendants' motion for summary judgment and deny Plaintiffs' motion for summary judgment. This Court lacks jurisdiction over this case, Plaintiffs' suit is untimely, and their claims lack merit.

Under the Immigration and Nationality Act (INA), an alien may be granted asylum if, among other things, he has been persecuted or has a well-founded fear of persecution "on account of" a protected ground. 8 U.S.C. §§ 1101(a)(42), 1158. The INA lists five protected grounds: "race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42). This case concerns the "particular social group" ground—an ambiguous legal term well known to be the most difficult-to-define of the protected grounds. Given its ambiguous nature, the Attorney General has recently issued precedential, authoritative decisions clarifying the meaning and scope of a cognizable "particular social group." Most relevant here, he did so in *Matter of L-E-A-*, 27 I. & N. Dec. 581, 586 (A.G. 2019) (*L-E-A- II*), which addresses when a family can qualify as a "particular social group." That decision is controlling on all employees of the Departments of Justice and Homeland Security, 8 U.S.C. § 1103(a)(1), and is subject to *Chevron* deference. *Grace v. Barr*, 965 F.3d 883, 896 (D.C. Cir. 2020).

Plaintiffs are inadmissible aliens who claim to fear persecution in their home countries based on their membership in certain family groups. After they arrived, asylum officers interviewed them to assess whether they had a credible fear of persecution or torture—a threshold screening to assess whether an alien has a claim for asylum or other protection from removal that is plausible enough to pursue it in removal proceedings. Asylum officers determined that Plaintiffs did not establish a credible fear—that is, "a significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien could establish eligibility for asylum under section 1158

of this title," 8 U.S.C. § 1225(b)(1)(B)(v)—and thus were subject to expedited removal. 8 C.F.R. § 208.30(e)(2),(3).

Plaintiffs filed this suit, alleging that their credible-fear claims were wrongly rejected based on guidance and training materials distributed to asylum officers by the United States Citizenship and Immigration Services (USCIS) explaining the Attorney General's decision in *L-E-A- II*. Plaintiffs alleged that the rejection of their credible-fear claims was unlawful because the guidance and training materials related to whether a family unit can be a particular social group violate the INA and Refugee Act and "fail[] to adequately acknowledge, much less reasonably explain, [their] departure from settled law." Am. Compl. ¶¶ 121-31.

Plaintiffs' claims are wrong and should be rejected, and this Court should grant Defendants' motion for summary judgment in full for the following reasons. To begin, this Court lacks jurisdiction over their claims. As the D.C. Circuit recently explained, where, as here, the challenged policies "are contained in both the [USCIS] Guidance and" the Attorney General's decision, the court "must address the district court's jurisdiction to review the latter." *Grace*, 965 F.3d at 895. Plaintiffs cannot establish jurisdiction for three reasons. *First*, any challenge to *L-E-A- II* is time-barred under 8 U.S.C. § 1252(e)(3)—the sole basis for jurisdiction in this case—as Plaintiffs initiated suit more than "60 days after the date" *L-E-A- II* issued. *Second*, even were their challenge timely, *L-E-A-II* does not "implement" the expedited removal statute, as required under 8 U.S.C. § 1252(e)(3). *Third*, because the guidance and training materials merely repeat the legal conclusions found in *L-E-A- II*, neither the guidance nor the training materials are "implementations" of the expedited removal statue.

Next, Plaintiffs lack Article III standing to challenge the guidance or training materials, because an order invalidating the USCIS guidance and training materials would not redress their

claimed injuries, which stem from *L-E-A- II* (which Plaintiffs have previously conceded cannot be challenged here). For the same reason, they cannot demonstrate causation for purposes of standing.

Even if their claims are justiciable, they lack merit. The Attorney General in *L-E-A- II* merely reiterated the well-established analytical framework set forth in *Matter of M-E-V-G-*, 26 I. & N. Dec. 227 (BIA 2014) (*M-E-V-G-*), for determining whether a family-based particular social group is cognizable, a framework that applies in equal force to every other proposed social group. The Attorney General's decision in *L-E-A- II* is reasonable and entitled to deference.

Finally, even assuming the Plaintiffs' claims are justiciable and otherwise meritorious, the sole relief the Court should enter is to set aside the policies over which the Court has jurisdiction and that it finds unlawful, and vacate Plaintiffs' individual removal orders. Anything broader is barred by Article III principles and the INA. *See* 8 U.S.C. § 1252(e)(1).

## LEGAL BACKGROUND

### I.    Expedited Removal and Credible-Fear Screening.

Congress has authorized the Department of Homeland Security (DHS) to summarily remove from the United States certain aliens who are arriving in or recently entered the country and have no basis to remain. *See* 8 U.S.C. § 1225(b)(1). Under this mechanism—known as "expedited removal"—an alien "who is arriving in the United States" who lacks valid entry documentation or makes material misrepresentations shall be "order[ed] ... removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under [8 U.S.C. § 1158] or a fear of persecution." *Id.* § 1225(b)(1)(A)(i); *see id.* § 1182(a)(6)(C), (a)(7). If an alien makes no such indication, he can be removed immediately. *See id.* § 1225(b)(1)(A)(i). But if the alien "indicates either an intention to apply for asylum … or a fear of persecution," the immigration officer must "refer the alien for" an interview by an asylum officer. *Id.* § 1225(b)(1)(A)(ii); 8 C.F.R. §§ 208.30(e)(3), 235.3(b)(4). In such an interview, an

asylum officer assesses whether the alien has a "credible fear of persecution or torture," which is "that there is a significant possibility, taking into account the credibility of the statements made by the alien and such other facts as are known to the officer, that the alien could establish eligibility for asylum under [8 U.S.C. § 1158]." 8 U.S.C. § 1225(b)(1)(B)(v).

If the asylum officer determines that the alien has a credible fear, the officer refers the alien to removal proceedings under 8 U.S.C. § 1229a. *Id.* § 1225(b)(1)(B)(ii); 8 C.F.R. §§ 208.30(f), 235.6(a)(1)(ii). In section 1229a removal proceedings an alien may apply for asylum or other relief or protection from removal. 8 U.S.C. § 1225(b)(1)(B)(ii); 8 C.F.R. § 208.30(f). An alien can appeal an adverse decision to the Board of Immigration Appeals (Board), and can obtain judicial review of an adverse Board decision by a court of appeals. 8 U.S.C. § 1252(a)(1).

If, however, the asylum officer determines that the alien does not have a credible fear, the alien may seek *de novo* review of the credible-fear determination before an immigration judge (IJ). *Id.* § 1225(b)(1)(B)(iii)(I), (III). If, after review, the IJ concludes that the alien has established a credible fear, the IJ will vacate the asylum officer's decision and DHS will place the alien in section 1229a removal proceedings. 8 C.F.R. § 1003.42(f). If the IJ agrees with the asylum officer that the alien lacks a credible fear, the alien must be "removed from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(B)(iii)(I); 8 C.F.R. § 1208.30(g)(2)(iv)(A). The INA precludes further review of the credible-fear determination by the Board or any court. 8 U.S.C. §§ 1225(b)(1)(C), 1252(a)(2)(A)(iii), 1252(e)(2); 8 C.F.R. § 1003.42(f).

## II.     U.S. Asylum Law.

### A.     Attorney General's Authority over Immigration Law.

Eligibility for asylum, whether assessed in a credible-fear interview or in removal proceedings, is governed by 8 U.S.C. § 1158. Under section 1158, an alien may be granted asylum if (among other requirements) he demonstrates that he is a "refugee" and that he warrants a

favorable exercise of discretion. *Id.* §§ 1101(a)(42), 1158(b). A "refugee" is someone who (1) has suffered (or has a well-founded fear of) "persecution" (2) "on account of" (3) one of five protected grounds—"race, religion, nationality, membership in a particular social group, or political opinion." *Id.* §§ 1101(a)(42), 1158(b)(1)(B)(i).

The Attorney General and the Secretary of Homeland Security each has authority to grant asylum, in different contexts. *Id*. § 1158(b)(1)(A). The Attorney General also has authority to "review such administrative determinations in immigration proceedings, delegate such authority, and perform such other acts as necessary for carrying out" his duties related to the immigration and naturalization of aliens. *Id*. § 1103(g)(2). Exercising that authority, the Attorney General vested the Board with power to issue precedential decisions on the "proper interpretation and administration of the [INA] and its implementing regulations." 8 C.F.R. § 1003.1(d)(1), (g). The Attorney General retains final decision-making authority by certifying to himself cases to review and issue decisions. *Id.* § 1003.1(g)-(h). Through this adjudicatory scheme, the Attorney General and the Board give statutory terms "concrete meaning through a process of case-by-case adjudication." *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 448 (1987)); *see Grace*, 965 F.3d at 896 ("it is 'well settled that principles of *Chevron* deference are applicable' to the Attorney General's interpretation of the INA") (quoting *Negusie v. Holder*, 555 U.S. 511, 516 (2009)). And Congress has provided that, for all "laws relating to the immigration and naturalization of aliens," the "determination and ruling by the Attorney General with respect to all questions of law shall be controlling." 8 U.S.C. § 1103(a)(1).

### B.    "Particular Social Group."

The Attorney General has (himself or through the Board) exercised the interpretive authority conferred in section 1103(a)(1) and (g) to rule on important questions regarding asylum.

*See, e.g.*, *Matter of Acosta*, 19 I. & N. Dec. 211, 222-23 (BIA 1985) (*Acosta*), *modified on other grounds*, *Matter of Mogharrabi*, 19 I. & N. Dec. 439 (BIA 1987); *Matter of McMullen*, 17 I. & N. Dec. 542, 544-45 (BIA 1980). Relevant here, the Board has also interpreted the various protected grounds for claiming asylum, including "membership in a particular social group," which is recognized to pose special challenges because the term could be read so capaciously that it would become a catch-all, rendering the other protected grounds superfluous. *See S.E.R.L. v. Att'y Gen. U.S.*, 894 F.3d 535, 549 (3d Cir. 2018). In *M-E-V-G-* and *Matter of W-G-R-*, 26 I. & N. Dec. 208 (BIA 2014) (*W-G-R-*), the Board clarified the term's scope, ruling that a "particular social group" must be: (1) composed of members who share a common immutable characteristic; (2) defined with particularity; and (3) socially distinct within the society in question. *M-E-V-G-*, 26 I. & N. Dec. at 237; *W-G-R-*, 26 I. & N. Dec. at 212-18. The Board emphasized that social distinction and particularity were "fact-based" and depended on evidence of how the group was perceived in the society in question. *M-E-V-G-*, 26 I. & N. Dec. at 242. Every circuit to address the question so far has accorded *Chevron* deference to the Board's interpretation of "particular social group" in *M-E-V-G-* and *W-G-R-*.[1]

## C.    *L-E-A- II* and USCIS Guidance and Training Materials Following *L-E-A- II*.

This case involves the specific question of whether an individual immediate family may qualify as a particular social group. The Board first addressed that issue in *Matter of L-E-A-*, 27 I. & N. Dec. 40, 42-43 (BIA 2017) (*L-E-A- I*). In *L-E-A- I*, gang members threatened the asylum

---

[1] *Paiz-Morales v. Lynch*, 795 F.3d 238, 243 (1st Cir. 2015); *Paloka v. Holder*, 762 F.3d 191, 195-96 (2d Cir. 2014); *S.E.R.L.*, 894 F.3d at 555; *Oliva v. Lynch*, 807 F.3d 53, 61 (4th Cir. 2015); *Hernandez-de la Cruz v. Lynch*, 819 F.3d 784, 787 n.1 (5th Cir. 2016); *Zaldana Menijar v. Lynch*, 812 F.3d 491, 498 (6th Cir. 2015); *Ngugi v. Lynch*, 826 F.3d 1132, 1138-39 (8th Cir. 2016); *Garay Reyes v. Lynch*, 842 F.3d 1125, 1137 (9th Cir. 2016); *Rodas-Orellana v. Holder*, 780 F.3d 982, 991-96 (10th Cir. 2015); *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 404-06 (11th Cir. 2016); *cf. W.G.A. v. Sessions*, 900 F.3d 957, 964 (7th Cir. 2018) (reserving question).

applicant to get access to his father's store, where they wanted to sell drugs. *Id.* at 41. L-E-A-applied for asylum, claiming that he was persecuted on account of membership in a particular social group of his father's immediate family. *Id.* at 43. The Board stated that "members of an immediate family *may* constitute a particular social group." *Id.* at 42 (emphasis added). But critically, the Board held, without further analysis under the *M-E-V-G-* framework and based on "the facts of this case and the agreement of the parties," that L-E-A-'s group "of his father's immediate family" was a cognizable particular social group. *Id.* at 42-43. The Board nevertheless denied L-E-A-'s asylum application because he did not prove that his family membership was "one central reason" for the gang's actions against him. *Id.* at 46-47.

The Attorney General directed the Board to refer to him its decision in *L-E-A- I* pursuant to 8 C.F.R. § 1003.1(h)(1)(i), and the parties submitted briefing on "whether and under what circumstances an alien may establish persecution on account of membership in a 'particular social group' … based on the alien's membership in a family unit." *Matter of L-E-A-*, 27 I. & N. Dec. 494, 494 (A.G. 2018).

On July 29, 2019, the Attorney General issued a decision concluding that the Board had erred in *L-E-A- I* by determining that L-E-A-'s proposed group was a "particular social group" without conducting the necessary "fact-based inquiry" required by *M-E-V-G-* to decide if the group met the particularity and social-distinction requirements. *L-E-A- II*, 27 I. & N. Dec. at 586. The Attorney General concluded that the Board had impermissibly accepted that the group was cognizable "based on DHS's stipulation rather than its own legal analysis." *Id.* Kinship groups must be tested under all of the criteria in *M-E-V-G-*—*i.e.*, immutability, particularity, and social distinction. *Id.* at 587. The Attorney General concluded that a categorical rule accepting family-based groups as particular social groups would be "inconsistent with both the asylum laws and the

7

long-standing precedents of the Board" that require more than immutability alone. *Id.* at 591. Individual family-based groups—like any other proposed particular social group—must be shown to be "particular," having "discernible boundaries," and socially distinct, meaning set apart from others in the society "in some significant way." *Id.* at 593 (citing *Matter of S-E-G-*, 24 I. & N. Dec. 579, 583 (BIA 2008)). Because claims would be based on membership in a specific family, not on membership in a family in the abstract, aliens must show that their specific family meets the social distinction criterion and not just that families generally are seen as groupings within the society. *Id.* at 594. Thus, the Attorney General determined that "[t]he average family—even if it would otherwise satisfy the immutability and particularity requirements—is unlikely to be so recognized." *Id.* The Attorney General concluded: "This opinion does not bar all family-based social groups from qualifying for asylum .... But unless an immediate family carries greater societal import, it is unlikely that a proposed family-based group will be 'distinct' in the way required." *Id.* at 595. The Attorney General therefore overruled the portion of *L-E-A- I* finding L-E-A's social group to be cognizable based on the parties' stipulations. *Id.* at 597.

The Attorney General also noted that all courts of appeals to consider the issue have deferred to the *M-E-V-G-* framework. *Id.* at 591-92 (citing *Matter of A-B-*, 27 I. & N. Dec. 316, 327 & n.6 (A.G. 2018) (*A-B-*) (collecting cases)). The Attorney General further noted that some courts of appeals had, despite their deference to the *M-E-V-G-* framework, stated categorically that immediate family groups or families generally constitute cognizable social groups, and that such holdings were "inconsistent with both the asylum laws and the long-standing precedents of the Board." *Id.* (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005)). He concluded that he therefore "interpret[ed] the ambiguous term 'particular social group' in the manner that [he] believe[d] to be the most faithful to the text, purpose, and policies

underlying the asylum statute." *Id.* at 592.

On July 29, 2019, immediately after the Attorney General issued his decision in *L-E-A- II*, USCIS advised its asylum officers about the decision and that they were obliged to follow it. USCIS012; *see also* 8 C.F.R. §§ 103.10(b) (providing that precedent decisions of the Board and Attorney General "shall be binding on all officers and employees of the [DHS]"), 1003.1(g) (same). In an undated Policy Memorandum, USCIS013-019, USCIS advised its employees of the Attorney General's decision, which the memorandum referred to as "binding on all USCIS officers since July 29, 2019." USCIS014. The Policy Memorandum stated that, because *L-E-A- II* was an interpretation of an ambiguous term in the INA by the Attorney General, its holding should be applied in every circuit and would override earlier contrary court decisions "unless and until a circuit court holds to the contrary." USCIS014 n.1. USCIS also revised its "Lesson Plan Overview," an internal training document dated September 24, 2019. USCIS042. *See generally* 8 U.S.C. § 1103(a)(1)-(3) (empowering the Secretary to "issue such instructions" necessary to "control, direct[], and supervis[e] all employees" and "files" of DHS and ensure that the immigration laws are being properly administered); *id.* § 1225(b)(1)(E)(i) (requiring an "asylum officer" to receive "professional training in country conditions, asylum law, and interview techniques comparable to that provided to full-time adjudicators of [asylum] applications.").

## PROCEDURAL BACKGROUND

Plaintiffs initiated this suit on November 22, 2019, 117 days after the Attorney General issued his decision in *L-E-A- II*. Their operative complaint, filed December 9, alleges that the USCIS Lesson Plan and the Policy Memorandum, which they refer to collectively as the "New PSG Guidance," violate the INA because they instruct asylum officers to apply the Attorney General's decision in *L-E-A- II*. Am. Compl. ¶¶ 71-74. Plaintiffs invoked 8 U.S.C. § 1252(e)(3), which authorizes "[j]udicial review of determinations under section 1225(b) of this title and its

implementation." 8 U.S.C. § 1252(e)(3). Plaintiffs contend that *L-E-A- II* "in dicta" "articulated new, erroneous, and unlawful standards for adjudicating asylum claims when applicants fear persecution because of their family membership." Am. Compl. ¶ 3. Plaintiffs bring three claims. *First*, they claim that "[t]he New PSG Guidance violates the INA and Refugee Act by imposing an unlawful presumption against family-based PSGs, arbitrarily departing from decades of agency guidance requiring an individualized, fact-based, case-by-case social group analysis," and "fails to adequately acknowledge, much less reasonably explain, its departure from settled law." *Id*. ¶¶ 121-27. *Second*, they claim that "[t]he New PSG Guidance violates the APA by explicitly prohibiting asylum officers from applying decades of controlling precedent from the courts of appeals and the BIA recognizing that ordinary families constitute quintessential PSGs [*i.e.*, particular social groups]," and fails to explain its departure from settled law. *Id*. ¶¶ 128-31. *Third*, Plaintiffs claim that the "New PSG Interview Policy" violates due process by "foreclosing their claims regardless of their individual facts or merits; by applying an unlawful, more burdensome legal standard to Plaintiffs' claims; and by depriving them of a meaningful opportunity to establish their potential eligibility for asylum and withholding of removal." *Id*. ¶¶ 132-35. For relief, they seek to have this Court declare the "New PSG Guidance" contrary to law; enter an order vacating the "New PSG Guidance"; and enjoin "Defendants from continuing to apply the New PSG Guidance (including but not limited to the Credible Fear Lesson Plan, USCIS Guidance and all written guidance issued by DHS and DOJ relating to *L-E-A- II*) to credible or reasonable fear determinations, interviews, or hearings issued or conducted by asylum officers or immigration judges." Am. Compl. Prayer for Relief.

Plaintiffs initially brought a motion for preliminary relief, but after the D.C. Circuit issued its decision in *Grace*, 965 F.3d 883, which bears on the jurisdictional and merits issues presented

here, the parties agreed to proceed directly to summary judgment. On September 4, 2020, Plaintiffs moved for summary judgment. ECF no. 47. Defendants now move for summary judgment and oppose Plaintiffs' motion for summary judgment.

## STANDARD OF REVIEW

Because Plaintiffs challenge agency action through record review, the usual summary judgment procedures do not apply. "[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal. The 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). "Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." *Nat'l Auto. Dealers Ass'n v. F.T.C.*, 864 F. Supp. 2d 65, 72 (D.D.C. 2012).

## ARGUMENT

The Court should grant Defendants' motion for summary judgment and deny Plaintiffs' motion for a summary judgment. This Court lacks jurisdiction over Plaintiffs' claims under section 1252(e)(3), and Plaintiffs lack standing because the Court cannot redress their alleged injuries. Even if Plaintiffs could surmount these threshold hurdles, their claims lack merit, and their requested relief is far too broad in any event.

## I.     This Court Lacks Jurisdiction Over this Case.

Plaintiffs assert jurisdiction exclusively under 8 U.S.C. § 1252(e)(3). Am. Compl. ¶ 22. Section 1252(e)(3), however, precludes jurisdiction here, which dooms Plaintiffs' challenges and requires granting the government summary judgment.

Title 8 U.S.C. § 1252(a)(2)(A), titled "Matters not subject to judicial review," provides that, for "[r]eview relating to section 1225(b)(1)"—including any order of expedited removal or credible fear determination issued under section 1225(b)(1)—"*[n]otwithstanding any other*

*provision of law* ... no court shall have jurisdiction to review ... *except as provided in subsection (e)* [*i.e.*, section 1252(e)]," "to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1)," "a decision ... to invoke the provisions of such section," or "procedures and policies adopted ... to implement the provisions of section 1225(b)(1) of this title." 8 U.S.C. § 1252(a)(2)(A)(i), (ii), (iv) (emphasis added). Section 1252(a)(2)(A) thus squarely removes from federal courts *any* jurisdiction to review issues "relating to section 1225(b)(1)," other than as expressly permitted by section 1252(e). *See Patchak v. Zinke*, 138 S. Ct. 897, 905 (2018) (phrase "notwithstanding any other provision of law" in jurisdictional provision encompasses 28 U.S.C. § 1331). If jurisdiction exists for "judicial review 'relating to section 1225(b)(1),'" it exists only "as provided in subsection (e)." *Make the Rd. New York v. Wolf*, 962 F.3d 612, 625-26 (D.C. Cir. 2020).

Section 1252(e)(3), titled "Challenges to the validity of the system," authorizes "[j]udicial review of determinations under section 1225(b) of this title and its implementation," in D.C. district court, "limited to determinations of—(i) whether [section 1225(b)], or any regulation issued to implement such section, is constitutional; or (ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General [or Secretary] to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law."[2] 8 U.S.C. § 1252(e)(3)(A). By its plain terms, then, this grant of jurisdiction permits review of the validity of section 1225(b)(1) itself and regulations and written policies that flesh out its structure and procedure. H.R. Rep. No.

---

[2] A second provision, 8 U.S.C. § 1252(e)(2), authorizes limited review in habeas of three discrete issues concerning individual determinations under section 1225(b)(1), but prohibits review of individual asylum determinations. 8 U.S.C. § 1252(a)(2)(A)(iii). Plaintiffs do not invoke this provision.

104-828, at 220 (1996) (Conf. Rep.) ("Section [1252](e)(3) provides for limited judicial review of the validity of *procedures* under section [1225](b)(1).") (emphasis added). Section 1252(e)(3) does not provide for review of individual determinations made by an asylum officer or, absent specific circumstances not presented here, the substantive standards an asylum officer or IJ applies. *See Grace*, 965 F.3d at 895-96. Those determinations and standards are based on the asylum statute— section 1158 not section 1225(b)(1). That jurisdictional limitation is further confirmed by section 1252(a)(2)(A)(iii), which expressly bars judicial review of credible-fear determinations under section 1225(b)(1)(B). Finally, suits under section 1252(e)(3) "must be filed no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure ... is first implemented." 8 U.S.C. § 1252(e)(3)(B).

Under a straightforward application of these provisions, the Court lacks jurisdiction over this case in its entirety. *First*, any challenge to *L-E-A- II* is time-barred under 8 U.S.C. § 1252(e)(3) because Plaintiffs initiated suit more than "60 days after the date" *L-E-A-* issued. As noted, "[a]ny action … must be filed no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure … is first implemented." 8 U.S.C. § 1252(e)(3)(B). *L-E-A- II* was issued July 29, 2019—**117** days before November 22, 2019, the date on which Plaintiffs initiated this lawsuit. Indeed, Plaintiffs have conceded that they are time-barred from challenging *L-E-A- II*.[3] This is important because, as the D.C. Circuit recently held in *Grace*, in a suit invoking section 1252(e)(3), where, as here, the challenged policies "are contained in both the [USCIS] Guidance and" the Attorney General's decision, the court "must address the district court's jurisdiction to review the latter." *Grace*, 965 F.3d at 895. Here, as explained further below, there

---

[3] *See, e.g.*, Reply In Support of Preliminary Injunction, ECF No. 31, at n.2.

is no daylight between what the Attorney General decided in *L-E-A- II* and what the guidance explains. *See infra* Section III.C. Given that the challenged policies "are contained in both the [USCIS] Guidance and [*L-E-A- II*,]" this Court lacks jurisdiction because Plaintiffs did not file within the limitations period.

To the extent that Plaintiffs might suggest this court may ignore the time-bar, they are mistaken. It is controlling law in this Circuit that "the 60 days [runs] from a fixed point, the initial implementation of the challenged [policy], rather than from the date of application of [the policy] to a particular alien." *Am. Immigration Lawyers Ass'n v. Reno*, 18 F. Supp. 2d 38, 47 (D.D.C. 1998) (*AILA I*), *aff'd*, 199 F.3d 1352, 1356-57 (D.C. Cir. 2000) (affirming dismissal of plaintiffs "who filed late" outside of the 60-day window "and for that reason had their claims dismissed"). And it is likewise controlling law that that section 1252(e)(3)(B)'s "60-day requirement is jurisdictional rather than a traditional limitations period." *AILA I*, 18 F. Supp. 2d at 47, *aff'd* 199 F.3d at 1356-57; *see M.M.V. v. Barr*, — F. Supp. 3d —, 2020 WL 1984309, at *16 (D.D.C. Apr. 27, 2020) ("The Court of Appeals has also concluded that the sixty-day bar is jurisdictional."); *Vijender v. Wolf*, 2020 WL 1935556, at *3-6 & n.5 (D.D.C. Apr. 22, 2020) (same, collecting cases); *Dugdale v. U.S. Customs and Border Prot.*, 88 F. Supp. 3d 1, 8-9 (D.D.C. 2015) (same); *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 18-19 (D.D.C. 2020) (same). Thus, the time bar is not subject to "equitable tolling" or the "relation back" doctrine. *AILA I*, 18 F. Supp. 2d at 47, *aff'd* 199 F.3d at 1356-57; *see M.M.V.*, 2020 WL 1984309, at *16 n.11 (same); *Vijender*, 2020 WL 1935556, *3-6 & n.5 (same, collecting cases). As such, because Plaintiffs' suit is jurisdictionally barred by their failure to timely challenge *L-E-A- II*, the Court lacks jurisdiction under section 1252(e)(3).

*Second*, even were their challenge timely, *L-E-A-II* does not "implement" the expedited

removal statute, as required under 8 U.S.C. § 1252(e)(3). As *Grace* held, it could review a decision of the Attorney General as implementing the expedited removal statute, because it did these three things: (1) "expressly reference[] the *credible-fear standard*," (2) "expressly reference[] ... *asylum officers'* role in implementing the expedited-removal system," and (3) "interpret section 1158's phrase 'membership in a particular social group,' which Congress incorporated into section 1225(b) by defining 'credible fear of persecution' as 'a significant possibility that the alien could establish eligibility for asylum under section 1158.'" 965 F.3d at 895 (emphasis added). Critical to *Grace*'s analysis was the fact that the Attorney General decision at issue in that case "declare[d] that 'when confronted with asylum cases based on purported membership in a particular social group ... *asylum officers must analyze the requirements as set forth in this opinion*'" *id.* (quoting *A-B-*, 27 I. & N. Dec. at 319, and that "[i]t also state[d] that 'few domestic violence and gang violence claims would satisfy the legal standard to determine whether an alien has a credible fear of persecution,' citing the statutory provision governing credible-fear interviews." *Id.* (citing *A-B-*, 27 I. & N. Dec. at 320 & n.1). As the Court further explained, it was not holding that anything beyond an Attorney General decision containing these key features was reviewable. *Id.* at 896. ("We do not hold today that a plaintiff may seek review of every BIA or Attorney General decision regarding asylum. Far from it, we hold only that the district court had jurisdiction to review *this* Guidance and that such jurisdiction extended to *A-B-* to the extent the Guidance incorporates *A-B-*." (emphasis in original)).

*L-E-A- II* does not come close to falling within the limited jurisdiction that *Grace* recognizes. The decision nowhere mentions credible fear, asylum officers, or section 1225. It does not describe or discuss what an asylum officer must do or whether family units may satisfy the particular-social-group standard. At most, it construes an ambiguous statutory term. But as *Grace*

15

made plain, section 1252(e)(3) does not permit "review of every BIA or Attorney General decision regarding asylum." *Id.* What is necessary is something more than the fact asylum law is being construed, such as explicit references to section 1225, credible fear, or asylum officers (who conduct credible fear interviews). *See id.* Such features being absent here, *L-E-A- II* does not implement section 1225(b), and the Court lacks jurisdiction under section 1252(e)(3).[4]

  *Third*, because the guidance and training materials merely repeat the legal conclusions reached in *L-E-A- II*, neither the guidance or the training materials are "implementations" of the expedited removal statue. Rather, they alert asylum officers of new binding precedent applicable in multiple circumstances beyond expedited removal. To the extent that the guidance is a "written policy guideline," it is a policy guideline "for Processing Reasonable Fear, Credible Fear, Asylum, and Refugee Claims in Accordance with *Matter of L-E-A*," as its title indicates. And the training materials are even more afield. It provides training to officers on how to apply the law governing asylum, statutory withholding of removal, and CAT protection in the credible fear screening context. It does so as part of DHS's mandate under section 1103(a)(1)-(3) to control, direct, and supervise its employees. Even if the Lesson Plan were an "implementation" of section 1225(b)(1), it is not one of the five types of action reviewable under section 1252(e)(3): a statute, a regulation, a "written policy directive," a "written policy guideline," or a "written procedure." 8 U.S.C. § 1252(e)(3). The Lesson Plan is not a statute or regulation. Nor is it a "policy directive" or "policy

---

[4] The government maintains for purposes of appeal that section 1252(e)(3), if it applies at all, permits review only of *procedures* implementing section 1225(b)(1), and not *substantive* asylum standards that might apply in credible fear interviews. Appellants' Petition for Rehearing En Banc, *Grace v. Barr*, 965 F.3d 883 (D.C. Cir. 2020) (No. 19-5013); *see also* H.R. Rep. 104-828, at 220 (1996) (Conf. Rep.) ("Section [1252](e)(3) provides for limited judicial review of the validity of *procedures* under section [1225](b)(1).") (emphasis added). The government acknowledges that *Grace*, by a 2-1 vote, rejected that argument. 965 F.3d at 892.

guidance." And it is not a written "procedure." Rather, the Lesson Plan is *training material* routinely updated to conform with 8 U.S.C. § 1225(b)(1)(E) and 8 C.F.R. § 208.1(b), which describe generally the training requirements that asylum officers must receive in connection with credible fear proceedings. *See* 8 U.S.C. § 1103(a)(1)-(3) (longstanding authority for the Executive Branch to train and supervise its employees in order to carry out the immigration laws). Had Congress intended for training materials under section 1225(b)(1)(E) to be subject to review under section 1252(e)(3), it could have easily added the term "training materials" to the list of terms triggering review under section 1252(e)(3).

Were it otherwise—that is, were mere reference to section 1158 sufficient—then *Grace*'s holding that section 1252(e)(3) does not authorize "review [of] every BIA or Attorney General decision regarding asylum," *id.*, would be a nullity. To illustrate that point, "particular social group," which *L-E-A- II* interprets, appears nowhere in section 1225(b)(1). If Plaintiffs were correct that any judicial or agency precedent were reviewable under section 1252(e)(3) simply because agency guidance or training informs line officers of those precedents, then USCIS would restart the sixty-day clock, and permit immediate district-court review, anytime a new circuit, Attorney General, or Board precedent issued and the Department took the prudent course of informing line officers that they must follow it. *See* 8 U.S.C. § 1103(a); 8 C.F.R. §§ 103.10(b), 1003.1(g)-(h) (providing that precedent binds line officers). This is far removed from "hav[ing] the validity of [implementations of section 1225(b)(1)] decided promptly," *Am. Immigration Lawyers Ass'n v. Reno*, 199 F.3d 1352, 1364 (D.C. Cir. 2000) (*AILA II*), and not what the D.C. Circuit allowed when it held that "[w]e do not hold today that a plaintiff may seek review of every BIA or Attorney General decision regarding asylum. Far from it, we hold only that the district court had jurisdiction to review *this* Guidance." *Grace*, 965 at 896. And it creates a

perverse incentive for agencies to not issue guidance or training materials concerning new precedent at all, since such materials would be considered to be implementing section 1225(b)(1). That state of affairs is flatly inconsistent with a statute meant to "weed[] out patently meritless [asylum] claims," to "expedite" removal of inadmissible aliens, and to "protect the Executive's discretion from undue interference by the courts." *Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1966 (2020) ("If courts must review credible-fear claims," once "a fear is asserted, the process would no longer be expedited.").

## II.    Plaintiffs Lack Standing Because They Cannot Demonstrate Causation or Redressability.

Even if the court has jurisdiction under section 1252(e)(3) to review the guidance and training materials, Plaintiffs' claims are nevertheless non-justiciable because Plaintiffs lack Article III standing. To demonstrate standing, a plaintiff must show: "(1) an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal connection' between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'" *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560-61 (1992)).

Plaintiffs fail to demonstrate causation and redressability. That is because, as discussed above, Plaintiffs cannot challenge *L-E-A- II* because they are jurisdictionally time-barred from doing so and Plaintiffs cannot invoke any equitable doctrine to avoid that jurisdictional reality. They filed this suit 117 days after *L-E-A- II* issued—well-outside the 60-day limitations period. *See* 8 U.S.C. § 1252(e)(3)(B).[5] Two conclusions necessarily follow.

*First*, Plaintiffs cannot demonstrate causation for Article III standing purposes. As the D.C.

---

[5] For this reason, Plaintiffs are also time barred from challenging the USCIS email on July 29. USCIS012.

Circuit has explained, where a party challenges government action that is itself caused by *different* government action, that party "needs to show that ... invalidating the provision will be reasonably likely to cause the [defendants] to" change course. *Renal Physicians Ass'n v. U.S. Dep't of Health and Human Servs.*, 489 F.3d 1267, 1276 (D.C. Cir. 2007). Applied here, Plaintiffs must show that invalidating the USCIS guidance and training materials would be reasonably likely to change the outcome of their credible-fear proceedings. *See id.* But that showing is impossible, because *L-E-A- II*, which sets the relevant asylum standard governing their claims and which cannot be challenged in this case, would be unaffected by any order of this Court granting the requested relief. *L-E-A- II* is binding law that all asylum officers must follow, even in the absence of specific guidance or training. *See* 8 U.S.C. § 1103(a), (g)(2); 8 C.F.R. § 103.3(c). Accordingly, the challenged guidance and training materials are not the cause of Plaintiffs' alleged injuries. Rather, by virtue of controlling law that Plaintiffs do not and could not challenge—the statutes and regulations requiring immigration officers to follow the controlling decisions of the Attorney General and the Board—*L-E-A- II* is, and thus Plaintiffs cannot show causation for standing purposes. *See, e.g.*, *Renal Physicians*, 489 F.3d at 1276. In short, Plaintiffs cannot show that their credible fear proceedings "will be altered or affected by the agency activity [they] seek[s] to overturn," *Chesapeake Climate Action Network v. Exp.-Imp. Bank of the U.S.*, 78 F. Supp. 3d 208, 225 (D.D.C. 2015) (internal quotation omitted), as the result would still be required under *L-E-A-* given 8 U.S.C. § 1103(a), (g)(2); 8 C.F.R. § 103.3(c).

*Second*, and relatedly, because the relief Plaintiffs seek reduces to a demand that *L-E-A- II* not be applied to them, the requested relief as to the USCIS guidance and training materials will not redress their purported injuries. Because they do not and cannot challenge *L-E-A- II*, Plaintiffs' alleged injuries (which stem from *L-E-A- II*) are not "redress[able] by a favorable decision"

because invalidating the guidance and training will not provide them with any actual relief. *See West v. Lynch*, 845 F.3d 1228, 1237 (D.C. Cir. 2017). Indeed, "[i]t is a well-established principle that a plaintiff cannot demonstrate redressability when its lawsuit challenges only one of two government actions that both independently produce the same alleged harm." *Kaspersky Lab, Inc. v. U.S. Dep't of Homeland Sec.*, 311 F. Supp. 3d 187, 219 (D.D.C. 2018). As the D.C. Circuit put it in a similar case, where "the undoing of the [challenged] governmental action will not undo the harm" caused by separate government action "because the new status quo is held in place by other forces," Plaintiffs' claims are not redressable. *Renal Physicians*, 489 F.3d at 1277; *see Delta Constr. Co. v. EPA*, 783 F.3d 1291, 1296 (D.C. Cir. 2015) (holding that petitioners did not have standing to challenge Environmental Protection Agency standards that allegedly raised the price of vehicles because the National Highway Traffic Safety Administration had substantially identical standards that were not challenged, and therefore "even were we to vacate the EPA standards, the NHTSA standards would still increase the price of vehicles"). Here, invalidating the USCIS guidance and training materials does nothing to redress the injuries Plaintiffs allegedly suffered tied to *L-E-A- II* because the INA and its implementing regulations require USCIS officers to apply *L-E-A- II* to Plaintiffs. 8 U.S.C. § 1103(a)(1); 8 C.F.R. §§ 103.3(c), 103.10(b), 1003.1(g).[6]

Plaintiffs completely gloss over these issues by asserting that the plaintiffs in *Grace* had standing and that the Court could redress their injuries in *Grace*. Mot. 15. But this ignores the basic

---

[6] *L-E-A- II* also applies to IJs reviewing credible fear denials. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(III); 8 C.F.R. § 1208.30(g)(2). An IJ conducting such review would be required to follow binding precedent issued by the Board and the Attorney General. *See* 8 C.F.R. § 1003.1(g). But Plaintiffs, again, do not challenge *L-E-A- II*. So regardless of whether they succeed in challenging USCIS's guidance and training, an IJ, when reviewing Plaintiffs' credible fear determinations would still apply *L-E-A- II*. Thus, for this additional reason, Plaintiffs cannot demonstrate redressability.

fact that the plaintiffs in *Grace* actually timely challenged the source of their injury—the relevant Attorney General adjudication (on which the guidance in that case was based). Plaintiffs also ignore the basic structure of the immigration system when they assert that it is *because* the Attorney General was not addressing credible fear interviews in *L-E-A- II* (a point they concede) that the guidance and training documents caused their injuries. As noted above, precedent decisions of the Board and Attorney General "shall be binding on all officers and employees of the [DHS] regardless of whether there is specific guidance or training. *See* 8 C.F.R. §§ 103.10(b), 1003.1(g) (same); *accord* 8 U.S.C. § 1103(a)(1). Plaintiffs do not and cannot challenge the legality of 8 U.S.C. § 1103(a)(1), and 8 C.F.R. §§ 103.10(b) and 1003.1(g), which the reason asylum officers must apply *L-E-A- II*, and so their alleged injuries, even if cognizable, are not redressable.

Accordingly, the Plaintiffs lack standing and the court should grant summary judgment in full to the government.

### III.    USCIS's Guidance and Training Materials Notifying Asylum Officers of the Attorney General's Decision in *L-E-A- II* is Lawful.

Even if their claims are justiciable, the Court should grant summary judgment to the government because Plaintiffs' claims are meritless. The Attorney General's decision in *L-E-A- II* is deserving of deference and reasonable, as he reiterates longstanding law requiring that adjudicators apply the well-established analytical *M-E-V-G-* framework when determining whether a family-based particular social group is cognizable, just as they must do for every other proposed social group. The decision in *L-E-A- II* corrected the errors in *L-E-A- I* by bringing the analysis of the social distinction requirement for family groups into line with *M-E-V-G-*. And the USCIS guidance and training materials advising Asylum Officers of the decision merely repeat the decision verbatim and abrogate contrary guidance that was issued prior to the course-correction. As such, there are no grounds to find the guidance and training materials unlawful, and

the Government is entitled to summary judgement.

      **A.**     ***L-E-A- II* is entitled to deference under *Chevron* because it reiterates well-established Board precedent interpreting the term "particular social group" as requiring that proposed groups be socially distinct within the society in question.**

      "It is 'well settled that principles of *Chevron* deference are applicable' to the Attorney General's interpretation of the INA," such as this one. *Grace*, 965 F.3d at 896 (quoting *Negusie*, 555 U.S. at 516). In *Grace*, the D.C. Circuit applied the two-step *Chevron* review to the Attorney General's interpretation of the INA.[7] 965 F.3d at 896; *see Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843-44, & n.11, 65-66 (1984) (where a statute is ambiguous and the implementing agency's interpretation is reasonable, courts should accept the agency's reading of the statute). More specific to this case, in *Gonzales v. Thomas*, 547 U.S. 183 (2006), the Supreme Court acknowledged the ambiguity of "particular social group" in the same context at issue in *L-E-A- II*—deciding whether an individual family constituted a particular social group—and remanded a case in which the Ninth Circuit had improperly made a finding in the first instance, without allowing the Board to decide the issue initially.

      The Attorney General's decision in *L-E-A- II* that the Board's social group framework, most recently articulated in *M-E-V-G-*, applies with equal rigor to groups involving familial relationships deserves deference under *Chevron*. Critically, the Attorney General reasonably applied the Board's interpretation that the ambiguous term "particular social group" includes a social distinction requirement. *L-E-A- II*, 27 I. & N. Dec. at 580-81, 582 (all groups must be "socially distinct in the eyes of [the applicant's] society, not just those of [his] alleged persecutors,"

---

[7] Courts of Appeals have unanimously agreed that the term "particular social group" is ambiguous. *See supra* note 1; *see also W.G.A.*, 900 F.3d at 963-64 (although the Seventh Circuit has not yet deferred to *M-E-V-G-*, it has agreed that the term is ambiguous).

citing *M-E-V-G-*, 26 I. & N. Dec. at 237), 591 ("Since *Matter of Acosta*, the Board has emphasized that a 'particular social group' must be particular and socially distinct in the society at question, which itself requires a fact-specific inquiry based on the evidence in a particular case."). This holding is consistent with the Board's case-by-case development of the social distinction requirement, as well as circuit court precedent that follows that development, and is thus reasonable. As articulated in *M-E-V-G-*, the social distinction requirement has two components that are especially important for claims based on familial relationship: (1) the applicant must show that his proposed group is recognized as set apart by his society, and (2) that the applicant's *persecutor* recognizes his group as set apart is relevant, but not sufficient. *M-E-V-G-*, 26 I. & N. Dec. at 235-36, 241-43.

As discussed previously by Defendants, this approach is consistent with Board and circuit court precedent. Defs.' Opp. to Plfs. Mot. for Preliminary Injunction 21-27. The Board's 1996 decision in *H-*, which preceded the Board's synthesis in *M-E-V-G-*, shows that social distinction has to be proved for the specific group at issue, even when that group is a family. *Matter of H-*, 21 I. & N. Dec. 337 (BIA 1996) (*H-*); *see L-E-A- II*, 27 I. & N. Dec. at 587-88. H- claimed that he feared persecution on account of his membership in a specific family group in Somalia, the Marehan sub-clan of the Darood clan. *H-*, 21 I. & N. Dec. at 340. This specific family group was high profile in Somalia because Somalia's former president was a member of the Marehans, and the Marehans' corrupt accumulation of wealth under that president's twenty-one-year rule was a common grievance among the other clans, who had rebelled against his rule. *Id* at 340, 343. Based on this evidence of the social recognition of the Marehan sub-clan, the Board concluded that the Marehan sub-clan was a particular social group in Somalia. *Id.* at 343. Similarly, in *Al-Ghorbani v. Holder*, 585 F.3d 980, 994-97 (6th Cir. 2009), the Sixth Circuit considered both whether the

applicants' specific family was set apart within their society, and the Yemen's general class structure, in which an individual's status could be ascertained by his last name.

The Board in *L-E-A- I* erroneously relied on party concessions to rule, for the first time, that an immediate family was a cognizable social group, without testing the actual group proposed for social salience in their society under the *M-E-V-G-* framework that explicitly applies to all social groups. 24 I. & N. Dec. at 43. Contrary to the method used in *H-* and *M-E-V-G-*, the Board declined to consider whether L-E-A-'s specific family was recognized as distinct in Mexico. *Id.* (the only fact the Board cites is that the applicant "reside[d] in his father's home"). The Attorney General held that *L-E-A- I*'s reasoning was at odds with *M-E-V-G-*'s methodology in one of two ways. When L-E-A- argued that his specific family was distinct because they were sought out by the drug cartel, this violates *M-E-V-G-*'s rule that social distinction has to be gauged from the point of view of the society in question, not just the persecutor's perception. "If cartels or other criminals created a cognizable family social group every time they victimized someone," *i.e.*, if the persecutors' perception alone was sufficient to finding that the family is set apart (by the nature of their being victimized by them), "then the social-distinction requirement would be eliminated." 27 I. & N. Dec. at 592. When L-E-A- argued that membership in families in the abstract is socially salient, so that any member of any family is a member of a particular social group, this would render "particular social group" a catch-all. "There is no evidence that Congress intended the term 'particular social group' to cast so wide a net." *Id.* at 593. Thus, the Attorney General concluded that an applicant must show that his particular family is socially distinct in their society in order to constitute a "particular social group" under *M-E-V-G-*. *Id.* at 593. The 2015 lesson plan predated and echoes the errors in *L-E-A- I*, as it also failed to require adjudicators to consider the social salience of the specific group that the applicant makes the basis for his claim for relief and

protection.

Accordingly, the Attorney General's discussion of particular social groups, and his proper application of the *M-E-V-G-* framework to claims involving familial relationships in *L-E-A- II*, is a reasonable return to Board, circuit, and Supreme Court precedent, and should be entitled to deference. Furthermore, the USCIS guidance merely restates the holdings in *L-E-A- II*, and it is therefore also lawful. First, the Guidance explicitly and correctly characterizes the Attorney General's decision as one that primarily holds that social groups relating to family membership must meet the *M-E-V-G-* requirements, and it "did not bar all family-based groups from qualifying for asylum." USCIS016; *see L-E-A- II*, 27 I. & N. Dec. at 595 ("This opinion does not bar all family-based social groups from qualifying for asylum."). Second, the Guidance, directly quoting the Attorney General, reminded adjudicators that social distinction is required for family groups. *Id.* ("'in the ordinary case, a nuclear family will not, without more, constitute a 'particular social group' because most nuclear families are not inherently socially distinct.'" (quoting *L-E-A- II*, 27 I. & N. Dec. at 589)). Later, in summarizing the effect of *L-E-A- II*, the USCIS guidance again described the Attorney General's *comment* about the "ordinary case" involving a nuclear family as a "predict[ion]" that was based on the correct application of the social distinction requirement. USCIS019. Here again, the Guidance is fully consistent with the Attorney General's predictive statements in *L-E-A- II* and not unreasonable. USCIS019. USCIS (and the Attorney General) was not creating a presumptive rule that would govern "ordinary families," a term which Plaintiffs use extensively but do not define. USCIS019. The Attorney General and USCIS have used the phrase "ordinary family" as a shorthand for a family that fails to meet the social distinction requirement, in other words: a family that is not recognized in its society as set apart in a meaningful way, and a family that is likely only recognized as set apart by its persecutor. Plaintiffs' attempt to argue

that the requirement that an applicant's specific proposed social group be socially distinct is a new or heightened requirement that was created solely for family groups is without merit. *See H-*, 21 I. & N. Dec. at 340-43; *Al-Ghorbani*, 585 F.3d at 593-98.

To the extent that Plaintiffs now argue that there is a gap between the USCIS guidance and *L-E-A- II*, they are wrong. Mot. 29-30. Plaintiffs allege that the Guidance contains one "requirement" that the Attorney General did not impose, that is: the Guidance requires that a family be "well-known." *Id.* First, the Guidance did not affirmatively require that a family group be "well-known"; instead, the Guidance refers to "well-known" families in order to explain that *previous* guidance in the 2015 Lesson Plan focused only on the social salience of the proposed kind of family unit, is no longer valid, as discussed above. USCIS014. And, moreover, that this exact phrase does not occur in *L-E-A- II* does not mean that it is a departure from the Attorney General's decision. Mot. 29. Again, the Guidance merely restates the findings in *L-E-A- II* that family groups (like all other proposed social groups) must be socially distinct. USCIS014-19. Social distinction requires that the group be recognized as set apart in society, that ocular visibility is not required, and that the persecutor's perspective alone is insufficient. *M-E-V-G-*, 27 I. & N. Dec. at 235-37. A family that is "well-known" could thus satisfy the social distinction requirement, but a family need not be "well-known" to do so. *See Al-Ghorbani*, 585 F.3d at 993-99.

**B.      To the extent prior court of appeals case law is read as establishing that family groups are per se cognizable, *L-E-A- II* properly invoked *Brand X* and thus should receive deference under *Chevron*.**

The Attorney General's decision in *L-E-A- II* and USCIS's guidance and training documents properly instruct adjudicators to follow *L-E-A- II*. The Attorney General stated that he was interpreting an ambiguous term in the statute, explained why his interpretation was reasonable, and explicitly invoked *Brand X*. USCIS's guidance merely restates what the Attorney General did in *L-E-A- II* and instructs officers to apply the decision, and the training materials only restate the

holding of *L-E-A- II*. Plaintiffs allege that *L-E-A- II* and USCIS's guidance and training documents do not warrant deference under *Brand X* and *Chevron* because: (1) "the Guidance's instructions are based on the Attorney General's *dicta* in *L-E-A- II*," and (2) "the New PSG Guidance sets forth an incorrect—or at least unreasonable—interpretation of the INA term 'particular social group.'" Mot. 34-36. Plaintiffs are incorrect because the Attorney General's interpretation of "particular social group" is a reasonable interpretation of an ambiguous term and warrants deference under *Chevron*. *See Brand X*, 545 U.S. at 982. The Attorney General therefore properly invoked *Brand X* as does USCIS's Guidance. Finally, the Attorney General's holding that family-based groups must satisfy the social distinction requirement to be cognizable is not *dicta*.

To the extent *L-E-A- II* represents a change in law, the Attorney General properly invoked *Chevron* and *Brand X*. *L-E-A- II*, 27 I. & N. Dec. at 592. Under *Brand X*, *Chevron* deference must be applied to an agency's interpretation of ambiguous statutory provisions, even where a court has previously issued a contrary decision and believes that its construction is the better one, provided that the agency's interpretation is reasonable. 545 U.S. at 982. The sole exception to this rule is where "the prior court decision holds that its construction follows from the unambiguous terms of the statute." *Id.* Unless and until a court holds that an agency's interpretation of a statute is contrary to the clear and unambiguous terms of that statute, the agency's interpretation is entitled to deference. *See Petit v. U.S. Dep't of Educ.*, 675 F.3d 769, 791 (D.C. Cir. 2012).

The Attorney General specifically invoked his authority to interpret the ambiguous term "particular social group" in *L-E-A- II*: "I therefore interpret the ambiguous term 'particular social group' in the manner that I believe to be the most faithful to the text, purpose, and policies underlying the asylum statute." 27 I. & N. Dec. at 592; *see supra* note 1. The Attorney General's decision is a straight-forward invocation of *Brand X*. *See* 545 U.S. at 982; *Petit*, 675 F.3d at 791.

USCIS's Guidance merely recognizes that the Attorney General's decision is entitled to *Chevron* deference under *Brand X*, as the Attorney General wrote. USCIS014 n.1. The Lesson Plan does not invoke *Brand X* by name, nor does it instruct officers to disregard circuit law. Instead, it states that USCIS's own prior guidance is no longer valid. USCIS042. Because, as explained, *see supra* Section III.A, the term "particular social group" is ambiguous and *L-E-A- II*'s interpretation of the term is reasonable, *L-E-A- II* is entitled to *Chevron* deference. And because no court of appeals had previously found that "ordinary families" are particular social groups under the plain language of the statute, the Attorney General properly invoked *Brand X*, and USCIS properly instructed its adjudicators to follow the Attorney General's binding precedent.

Plaintiffs' contrary arguments lack merit. Mot. 34-40. Plaintiffs first argue that "the Guidance's instructions are based on the Attorney General's *dicta* in *L-E-A- II*, and such *dicta* is not entitled to *Chevron* deference." Mot. 35. Specifically, they claim that the "Attorney General's gratuitous prediction that most 'ordinary' families would not qualify as PSGs was not essential to [the] holding" that adjudicators "must apply the three-pronged PSG analysis to each proposed PSG that comes before them" and thus is "classic *dicta*." Mot. 35. Plaintiffs are mistaken as to what *L-E-A- II* did. As stated previously, and as Plaintiffs admit, *L-E-A- II* merely instructed adjudicators to apply the social distinction requirement to family groups in the same way that requirement applies to all other groups. *See* Mot. 35 ("the actual holding of *L-E-A- II* was that immigration courts must apply the three-pronged PSG analysis to each proposed PSG that comes before them"). The Attorney General observed that the practical implication of requiring family groups to satisfy the social distinction requirement—which requires that the group at issue in the claim be set apart from society in some meaningful way—will be that "in the ordinary case, a nuclear family will not, without more, constitute a 'particular social group' because most nuclear families are not

inherently socially distinct." *L-E-A- II*, 27 I. & N. Dec. at 589.

The Attorney General's observation is not a holding and is akin to his statement in *A-B-* that claims based on gang- or domestic-violence "generally" will not meet the requirements for asylum, a statement the D.C. Circuit held did not create a categorical rule against such claims. *Grace*, 965 F.3d at 906 ("In other words, the record in this case does not support the asylum seekers' argument that USCIS and the Attorney General have erected a rule against asylum claims involving allegations of domestic and/or gang violence."). In so holding, *Grace* looked to the language of *A-B-* and the guidance, which "make clear that asylum officers must 'analyze each case on its own merits in the context of the society where the claim arises.'" *Id.* Here, the Attorney General stated that *L-E-A- II* "does not bar all family-based social groups from qualifying for asylum. To the contrary, in some societies, an applicant may present specific kinship groups or clans that, based on the evidence in the applicant's case, are particular and socially distinct." 27 I. & N. Dec. at 595. The Guidance, in a section entitled "No Categorical Bar or Universal Particular Social Groups," quotes the Attorney General's statement that *L-E-A- II* does not bar all family-based groups. USCIS018. The Guidance further provides that "an applicant may be a member of a specific kinship group or clan that, based on the evidence in the applicant's case and of the pertinent society, is immutable, particular, and socially distinct." *Id.* (citing *L-E-A- II*, 27 I. & N. Dec. at 595). This language, like that in *A-B-*, establishes that the Attorney General did not create a categorical rule barring a specific kind of particular social group in *L-E-A- II*.

Plaintiffs also argue that the Guidance should not be given deference because it "conflicts with the conclusion of *every* circuit that has ever interpreted" the term "particular social group," "the legislative history of that term," and "a plain text, common-sense reading of the broad phrase." Mot. 35-40. Plaintiffs are wrong. *First*, no court has held that "ordinary nuclear families are

*unambiguously* 'particular social groups.'" Mot. 37. In so arguing, Plaintiffs ignore overwhelming Supreme Court and courts of appeals precedent accepting that the term is ambiguous, ignore most courts of appeals precedent that accepts this ambiguity in the context of family claims specifically,[8] and overstate and mischaracterize the persuasiveness of the rare occasions where courts of appeals have categorically made pronouncements about families as social groups.

Most importantly, the cases Plaintiffs cite as holding that "ordinary nuclear families are *unambiguously* 'particular social groups,'" Mot. 27, do not do so. Indeed, to the extent that courts of appeals have discussed family membership and social group viability in more absolute or categorical terms, those decisions are not in keeping with the Board's interpretation of the statutory term and, accordingly, the Attorney General's decision in *L-E-A- II* is not "at odds with" those cases, as Plaintiffs contend. Mot. 36-37. The decisions upon which Plaintiffs rely were issued before the clarifications of the *M-E-V-G-* framework and did not acknowledge the required analysis by the agency, or did not follow the *M-E-V-G-* framework even if they were issued after the court's adoption of that framework generally. *See Gebremichael v. INS*, 10 F.3d 28, 36 (1st Cir. 1993); *Crespin-Valladares v. Holder*, 632 F.3d 117, 124-26 (4th Cir. 2011); *Iliev v. INS*, 127 F.3d 638, 642 & n.4 (7th Cir. 1997); *Flores Rios v. Lynch*, 807 F.3d 1123 (9th Cir. 2015); *see Sanchez-Trujillo v. INS*, 801 F.2d 1571, 1576 (9th Cir. 1986). For example, the First Circuit has stated that it is well-settled that "a nuclear family is a protected social group," *Sosa-Perez v. Sessions*, 884 F.3d 74, 80 (1st Cir. 2018) (emphasis added), but it cites as support a decision issued

---

[8] *See Aldana-Ramos v. Holder*, 757 F.3d 9, 15 (1st Cir. 2014); *Vumi v. Gonzales*, 502 F.3d 150, 155 (2d Cir. 2007); *Lopez-Monroy v. U.S. Dep't of Homeland Sec.*, 751 F. App'x 303, 306-07 (3d Cir. 2018); *Pena Oseguera v. Barr*, 936 F.3d 249, 251 (5th Cir. 2019); *Al-Ghorbani*, 585 F.3d at 995; *Ayele v. Holder*, 564 F.3d 862, 871-72 (7th Cir. 2009); *Bernal-Rendon v. Gonzales*, 419 F.3d 877, 881 (8th Cir. 2005); *Seka v. Sessions*, 714 F. App'x 901, 907 n.6 (10th Cir. 2017).

before the Board established the particularity and social distinction requirements for particular social groups. *Gebremichael*, 10 F.3d at 36 (relying on the "general principles" set forth in *Acosta*, the court found that "there can, in fact, be no plainer example of a social group based on common, identifiable and immutable characteristics than that of the nuclear family"). *But cf. Paiz-Morales*, 795 F.3d at 243-44 (subsequently, the First Circuit deferred to the Board's *M-E-V-G-* framework). The Seventh Circuit also bases its assertion that it "consider[s] family to be a cognizable social group," *Torres v. Mukasey*, 551 F.3d 616, 629 (7th Cir. 2008), on its pre-*M-E-V-G-* decision in *Iliev*. *Id.* (citing *Iliev*, 127 F.3d at 642); *cf. Gonzalez Ruano v. Barr*, 922 F.3d 346, 353 (7th Cir. 2019) ("membership in a nuclear family can satisfy the social group requirement"). But in *Iliev*, cognizability of the family group was not explicitly at issue, and the court solely "treated" the group as cognizable "for [the] purposes of [its] analysis" of another dispositive element. *Iliev*, 127 F.3d at 641-42, & n.4. Even though the Seventh Circuit has not explicitly deferred to the *M-E-V-G-* framework, *see Gatimi v. Holder*, 578 F.3d 611 (7th Cir. 2009), its reliance on *Iliev* in subsequent published decisions for this categorical statement about family social groups is not binding on the Board, as the court in *Iliev* itself did not decide the issue for which the decision is cited. *Iliev*, 127 F.3d at 641-42, & n.4.

In contrast, the Ninth and Fourth Circuits have referred to *M-E-V-G-* in making categorical statements that families are viable social groups, thus acknowledging implicitly the ambiguity of "particular social group" and the requirement that the cognizability analysis be done on a case-by-case basis by the Board first, but have not reviewed or conducted the analysis required by *M-E-V-G-*. In *Flores Rios*, while citing to *M-E-V-G-* and its three-pronged "refined" cognizability framework in making this assertion, 807 F.3d at 1127-28, the Ninth Circuit cites to its own decision in *Thomas v. Gonzales*, 409 F.3d 1177, 1180 (9th Cir. 2005). *Flores Rios*, 807 F.3d at 1128, states

that *Thomas* was "vacated on other grounds" by the Supreme Court, *see Thomas*, 547 U.S. 183, but the Supreme Court vacated *Thomas* because it found that the Ninth Circuit intruded on the Board's authority when it determined the cognizability of a family-based social group in the first instance. In other words, the Supreme Court disapproved the precise holding the Ninth Circuit relied on in *Flores Rios*. 547 U.S. at 186-87. While the Ninth Circuit remanded *Flores Rios*'s case so that the Board could consider the cognizability of his social group claim in the first instance, 807 F.3d at 1128, it has subsequently and erroneously cited its decision as a holding that family is a social group, *Quiroz Parada v. Sessions*, 902 F.3d 901, 910 (9th Cir. 2018) (quoting *Flores Rios*, 807 F.3d at 1128). And the Fourth Circuit, in making a similar assertion, cites back to *Crespin-Valladares*, in which the court found that "family" nominally met the *M-E-V-G-* criteria for a particular social group. *Id.* at 457 (citing *Crespin-Valladares*, 632 F.3d at 124-26). But in *Crespin-Valladares*, the court notably only deferred to the immutability test from *Acosta*, and it cited pre-*M-E-V-G-* cases as supporting its conclusion that the applicant's family also met the requirements of particularity and social distinction, without fulsome analysis. 632 F.3d at 124-26 (citing *Matter of C-A-*, 23 I. & N. Dec. 951, 959 (BIA 2006), and *Sanchez-Trujillo*, 801 F.2d at 1576); *see Oliva*, 807 F.3d at 61 (Fourth Circuit subsequently defers to *M-E-V-G-*).

Accordingly, Plaintiffs' contention that the guidance and training documents conflict with circuit court precedent holding that ordinary families qualify as particular social groups, Mot. 36-37, is without merit. Rather, the Board and most federal court precedents hold that family-based groups may qualify as particular social groups, not that they qualify automatically or as a matter of law. And to the extent that circuit precedent does make categorical statements about families generally, those decisions are not in keeping with the Board's interpretation of the criteria for cognizable social groups, which depends on case-by-case adjudication, applying the facts of the

case at hand to the criteria for valid groups. Considering this landscape, the Attorney General in *L-E-A- II* reasonably noted that many of the cases had mentioned the issue in *dictum* in "a cursory analysis that was either uncontested or not dispositive to the outcome" of the claim, which failed or was remanded on other grounds. 27 I. & N. Dec. at 589. And of the courts that have "suggested" that shared family ties alone were sufficient to make a particular social group, the Attorney General noted that they often simply relied on the *dictum* in *Acosta*, without testing under *M-E-V-G-*'s particularity and social distinction requirements. *Id.* at 589-90. The Attorney General, therefore, was not foreclosed by these decisions and thus neither was USCIS when issuing guidance relaying *L-E-A- II*'s holding to its officers.

     *Second*, requiring that individual families must be socially distinct to be a "particular social group" is not "at odds with the legislative history of that term." Mot. 37. Indeed, Plaintiffs' assertion that the history of the 1951 Convention Relating to the Status of Refugee indicates that "particular social group" was understood to include all individual families, Mot. 38, is contrary to the established understanding that there is no historical evidence sufficient to dictate any reading of "particular social group." While one purpose of the Refugee Act was to implement the United States' undertakings in the 1967 Protocol Relating to the Status of Refugees, *see Negusie*, 555 U.S. at 520, the Board and courts have often said there is no legislative history that shows what Congress understood "particular social group" to mean. *See Acosta*, 19 I. & N. Dec. at 232 ("Congress did not indicate what it understood this ground of persecution to mean."); *Fatin v. INS*, 12 F.3d 1233, 1239 (3d Cir. 1993) (Alito, J.) ("the legislative history of this act does not reveal what, if any, specific meaning the members of Congress attached to the phrase, 'particular social group'"). And to the extent that historical evidence about the Refugee Convention would shed light on congressional intent, the Board and courts also agree that the history of the Refugee Convention

and Protocol does not elucidate the meaning of "particular social group." *Acosta*, 19 I. & N. Dec. at 233 ("[N]or is its meaning clear in the Protocol."); *see also Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1095 (9th Cir. 2013) (en banc) (Kosinski, C.J., dissenting) ("But, the term 'social group' was added to the Convention last minute and without discussion, so there is little extrinsic evidence as to what it means.").

Scholars have debated the historical evidence bearing on possible original meanings. *See, e.g.*, Daniel Steinbock, Interpreting the Refugee Convention, 45 U.C.L.A. L. Rev. 733, 777-78 (1998) (If history of the 1951 Refugee Convention is "the guide," particular social group "should not be extended much beyond the sense of 'social class,'" as it was "a kind of code" used to shelter "persons fleeing Communism" during the Cold War "without giving undue offense" to the nations they were fleeing.). The paragraphs in the UNHCR Handbook on Procedures and Criteria for Determining Refugee Status (1979) (UNHCR Handbook) are consistent with the Cold War/class enemies theory.[9] Such evidence does not indicate that the original meaning included families.

Plaintiffs float a new historical theory, contrary to the Board and courts' conclusion that the history is inconclusive. They argue that a resolution in the closing report of the Conference of Plenipotentiaries on the Status of Refugees and Stateless Persons, U.N. Doc. A/Conf.2/108/Rev.1 (July 25, 1951) *available at* https://www.refworld.org/docid/40a8a7394.html, "confirms that the term 'particular social group'—imported by Congress into the Refugee Act—was intended and understood by Congress to encompass families." Mot at 38. But that document does not actually

---

[9] *E.g.*, UNHCR Handbook, para. 77 ("A 'particular social group' normally comprises persons of similar background, habits, or social status."), para. 78 ("Membership of such a particular social group may be at the root of persecution because there is no confidence in the group's loyalty to the Government or because the political outlook, antecedents or economic activity of its members, or the very existence of the social group as such, is held to be an obstacle to the Government's policies.").

refer to the term "particular social group" in the Refugee Convention. And the use of the word "family" in the resolution by the Conference of Plenipotentiaries shows that the drafters of the Refugee Convention knew how to use that word when they meant to refer to family, and the fact that they did not do so in the refugee definition tends to show they did not mean to. Plaintiffs point to no court decisions that have considered this reference germane to the meaning of "particular social group." Instead they argue that the Court should look to this history to "confirm Congress's clear intent based on the text of the statute," as they believe the D.C. Circuit did in *Grace*. Mot. 38 n.10. But in so arguing they entirely ignore the unanimous statements by courts and the Board that when it comes to the term "particular social group," "the legislative history ... does not reveal what, if any, specific meaning the members of Congress attached to the phrase." *Fatin*, 12 F.3d at 1239. Thus, their argument fails.

*Third*, Plaintiffs assertion that USCIS's Guidance "cannot be squared with a plain text, common-sense reading of the broad phrase 'particular social group'" is plainly wrong. Mot. 29. Not only is the term "particular social group" notoriously ambiguous, *see Fatin*, 12 F.3d at 1238 (noting that meaning of this term is so ambiguous that "[b]oth courts and commentators have struggled to define [it]," and "[r]ead in its broadest literal sense, the phrase is almost completely open-ended"), it has been construed narrowly in order to give meaning to the other protected grounds. *See Velasquez v. Sessions*, 866 F.3d 188, 198 (4th Cir. 2017) (Wilkinson, J. concurring) ("Had Congress intended 'membership in a particular social group' to be some omnibus catch-all, it would be odd to find its placement not at the end of a series, but sandwiched between more sharply etched criteria."); *Castillo-Arias v. U.S. Atty. Gen.*, 446 F.3d 1190, 1198 (11th Cir. 2006) ("'particular social group' should not be a 'catch all' for all persons alleging persecution who do not fit elsewhere").

35

### C.   USCIS's Guidance on *L-E-A- II* is not arbitrary and capricious because it tracks *L-E-A- II* and brings the analysis of family-based groups in line with Board precedent on the social distinction requirement.

USCIS's Guidance and lesson plan documents discussing *L-E-A- II* are not arbitrary and capricious. The documents merely restate the holding in *L-E-A- II* and instruct USCIS's adjudicators to follow *L-E-A- II* as the statute requires. The Guidance and lesson plan do not represent any change in policy on their own and thus are not arbitrary and capricious. Plaintiffs argue that the Guidance—but not *L-E-A- II*—departs from Board precedent without explanation or recognition of the departure, contains a new policy that is irrational and unsupported, and fails to consider whether to decline to apply *L-E-A- II* in credible fear. Mot. 26-34. They are mistaken.

As *Grace* explained, "[f]or those policies that are 'not interpretation[s] of any statutory language,'" the court reviews agency policies under section 1252(e)(3) under the familiar "'arbitrary or capricious'" "under the APA." 965 F.3d at 897 (quoting *Judulang v. Holder*, 565 U.S. 42, 52 n.7 (2011)). That standard is highly deferential. "Under this narrow standard of review, a court is not to substitute its judgment for that of the agency, but instead to assess only whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1905 (2020) (internal quotation marks omitted) (citation omitted). "That task involves examining the reasons for agency decisions." *Judulang*, 565 U.S. at 53. So long as there is "a rational connection between the facts found and the choice made," *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), the court must uphold the agency action. And that is true regardless of whether the agency announces new policies or changes prior policies, *see F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 514 (2009).

The guidance and training materials easily satisfy these deferential standards. The guidance and lesson plan are rational and adequately explained work product from the agency. Because

these documents are fully consistent with *L-E-A- II*, *see supra* Sections III.A & B, and because USCIS is bound by statute to apply the Attorney General's rulings, 8 U.S.C. § 1103(a)(1), they are logical and legal and thus neither arbitrary nor capricious. *Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 745 F.2d 677, 683 (D.C. Cir. 1984) (Scalia, J.). ("Paragraph (A) of subsection 706(2)—the 'arbitrary or capricious' provision—is a catchall, picking up administrative misconduct not covered by the other more specific paragraphs.").

Plaintiffs' contrary arguments all rely on the analytical error of failing to recognize that the change made by the USCIS guidance and to the lesson plan were mandated by *L-E-A- II*, which USCIS is required to follow under the INA. *See* 8 U.S.C. § 1103(a)(1). Thus, Plaintiffs' attempts to ignore *L-E-A- II* and analyze the Guidance and lesson plan changes in a vacuum fail.

*First*, Plaintiffs contend that "[t]he new PSG Guidance's 'greater societal import' requirement departs from that long line of precedent, and radically changes the standard by requiring *something more* than the family or kinship ties long found to constitute viable particular social groups under the INA." Mot. 27. That is wrong not only because no court has ever held that kinship ties alone create a particular social group but also because the "changes" announced in the Guidance and lesson plan derive from USCIS's statutory requirement to apply the Attorney General's rulings on legal issues, such as the ruling in *L-E-A- II*. *See* 8 U.S.C. § 1103(a)(1). The Guidance and lesson plan identify *L-E-A- II* as the reason for the change to its prior stance that the only requirement for a family group to be found socially distinct was the recognition of that level of relationship within the society. USCIS014-15. Plaintiffs attempt to cover this hole in their argument by later stating that "neither the Attorney General nor USCIS acknowledged that they were reversing their own prior interpretation and implementation of *M-E-V-G-*." Mot. 28. Plaintiffs are again wrong because the Attorney General explicitly overturned *L-E-A- I* in which the Board

had suggested that the focus of the social distinction analysis was society's recognition of the type

of relationship—and not the recognition of the group at issue in the claim itself. *L-E-A- II*, 27 I. &

N. Dec. at 596. And to the extent Plaintiffs claim that the Attorney General departed from Board

precedent, as Respondent has made clear, *L-E-A- II* instead marked a return to the Board's

approach to particular social group cognizability as clarified in *M-E-V-G-*.

Plaintiffs further argue that the difference between the updated lesson plan and the 2015

lesson plan demonstrates a "clear departure from both *M-E-V-G-* and the agency's implementation

of that decision." Mot. 29. They are wrong. The 2015 lesson plan represented USCIS's

understanding of *M-E-V-G-* and Board and circuit precedent at that time as directing the social

distinction requirement, as applied only to groups based on family relationship, as whether the

degree of relationship was recognized and not "whether a specific family is well-known in the

society." USCIS079. But *L-E-A- II* demonstrated to USCIS that its understanding was wrong.

Because USCIS must follow the Attorney General's rulings as to questions of law, 8 U.S.C.

§ 1103(a)(1), USCIS properly changed its guidance to match the Attorney General's decision.

USCIS013-19 (guidance entitled "Guidance for Processing Reasonable Fear, Credible Fear,

Asylum, and Refugee Claims in Accordance with Matter of L-E-A-").

Plaintiffs allege that the Guidance deviates from *L-E-A- II* "by explicitly imposing a 'well-

known' requirement for nuclear family-based PSGs." Mot. 29. They mischaracterize the Guidance.

The phrase "well-known" is used twice in the Guidance, only appearing in the section entitled

"Summary of Changes." USCIS014. In that section, the Guidance notes that its prior guidance

provided, "The question here is not generally whether a specific family is well-known in the

society." USCIS014 (quoting Nexus Particular Social Group Lesson Plan at 22). It also states that

USCIS's prior guidance "instructed officers to recognize particular social groups based on familial

relationships so long as the pertinent society perceived the degree of relationship among the family members as so significant that the society distinguished groups based on that type of relationship," and that "[t]his held true under past USCIS guidance, even for families that were not well-known in the relevant society." USCIS014. The phrase is used nowhere else in the Guidance, and nowhere does the Guidance state that a family must be "well-known." *See* USCIS013-19. Thus, Plaintiffs' argument is misleading and wrong.

*Second*, Plaintiffs contend that USCIS's Guidance "is irrational and unsupported" and "not the product of reasoned decision-making." Mot. 30. Again, they are wrong. Plaintiffs again ignore the fact that the Guidance merely explains *L-E-A- II* to USCIS's adjudicators and does not on its own establish a new policy. Their attempt to reach *L-E-A- II* with this argument because "[n]either *L-E-A- II* nor the New PSG Guidance provides any framework for determining when an applicant's family 'carries greater societal import' than 'ordinary' families and is 'recognizable by society at large,'" Mot. 30, entirely elides the fact that *L-E-A- II* merely brought the social distinction analysis for family groups into line with the analysis applied for all other social groups. *See supra* Section III.A. Thus, there is a framework—*M-E-V-G-* and the Board and circuit cases interpreting the social distinction analysis.

Plaintiffs instead argue that the *ejusdem generis* canon the Board has used to interpret the term "particular social group" since *Acosta* requires a broad reading of the term "particular social group" that allows for "ordinary" families to be social groups. Mot. 30. But that is not the route the Board has taken in interpreting the term "particular social group" and the social distinction requirement, a framework that all but one circuit court to have considered the issue has deferred to. *See supra* note 1. Plaintiffs' attempt to rewrite decades of the Board's interpretation of "particular social group" is thus unavailing.

39

*Third*, Plaintiffs argue that USCIS is not "bound to apply" *L-E-A- II.* Mot. 32. Not only do they provide no support for this claim, they are also wrong. Plaintiffs assert that USCIS does not have to bar all "ordinary" families from asylum, *id.*; but if by "ordinary" family they mean a family that does not meet the social distinction requirement—which is how the term is used in USCIS's Guidance—then USCIS is indeed bound to apply that rule as it must follow the rulings of the Attorney General. *See* 8 U.S.C. § 1103(a)(1). They suggest that USCIS could have instead allowed all applicants presenting claims based on membership in families to pass credible fear because regulations allow for claims raising "unresolved legal issues or are otherwise doubtful, uncertain, novel, or likely to require substantial factual development to receive a positive determination." Mot. 33. The regulations indeed instruct asylum officers to "consider whether the alien's case presents novel or unique issues that merit consideration in a full hearing before an immigration judge," 8 C.F.R. § 208.30(e)(4), but the existence of a narrow regulatory instruction about *novel or unique* issues does not overwrite the statute's plain language that USCIS must follow the Attorney General's rulings.

Accordingly, the government is entitled to summary judgment on all counts and the case must be dismissed in full.

## IV.   Any Relief Must Be Sharply Limited.

Even if Plaintiffs were entitled to summary judgment on any of their claims, relief should be limited to vacatur of the policies over which the court has jurisdiction, and should not include injunctive or retrospective relief.[10]

*First*, as a general rule, courts lack the authority to enter "system-wide" or universal

---

[10] Agency records indicate that Y.C.D.'s credible-fear determination was vacated by an IJ. Accordingly, he has obtained the relief he is seeking, and his claims are moot.

injunctions—*i.e.*, injunctions that preclude enforcement against any person, rather than only the plaintiffs. Article III and equitable principles require that relief be no broader than necessary to redress Plaintiffs' injuries. Under Article III, "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018). Quite apart from Article III, bedrock rules of equity require that injunctions be no broader than "necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (quotation omitted). Moreover, the equitable jurisdiction of federal courts is grounded in historical practice, *see Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318 (1999), yet nationwide injunctions are a modern invention, *see Trump v. Hawaii*, 138 S. Ct. 2392, 2425-2429 (2018) (Thomas, J., concurring in the judgment).

   *Second*, nothing in the APA indicates that a nationwide injunction is appropriate. *See Va. Soc'y for Human Life, Inc. v. Fed. Election Comm'n*, 263 F.3d 379, 393 (4th Cir. 2001) (holding that the district court should not have enjoined the agency from applying the challenged regulation to any party when "[a]n injunction covering [plaintiff] alone adequately protects it from the feared prosecution"), *cited with approval in Neb. Dep't of Health & Human Servs. v. Dep't of Health & Human Servs.*, 435 F.3d 326, 330 (D.C. Cir. 2006); *cf. Hawaii*, 138 S. Ct. at 2425 (Thomas, J., concurring) ("No statute expressly grants district courts the power to issue universal injunctions."). The APA provides only that a court may "hold unlawful and set aside agency action." 5 U.S.C. § 706(2). But no part of that text specifies whether any action, if found likely to be invalid, should be set aside on its face or as applied to the challenger. In the absence of a clear statement to the contrary, this Court should adopt the reasonable—rather than sweeping—reading of the "set aside" language. *See Va. Soc'y for Human Life*, 263 F.3d at 393 ("Nothing in the language of the APA, however, requires us to exercise such far-reaching power."). The APA itself provides that absent

a statutory review provision, the proper "form of proceeding" is a traditional suit for declaratory or injunctive relief that is subject to the rules constraining equitable relief as being limited to determining the rights of the parties. 5 U.S.C. § 703. Consistent with such equitable principles, the APA should thus be read to limit relief to the parties before it. Indeed, the APA's very reference to actions for "declaratory judgments" makes clear that no injunction—much less a nationwide injunction—is in any sense compelled by the APA when agency action is held unlawful. *See id.*; H.R. Rep. No. 1980, 79th Cong., 2d Sess. 42 (1946) (referring to possibility of suits for declaratory relief to "determine the validity or application of a rule or order"); *see also* S. Rep. No. 752, 79th Cong., 1st Sess. 26 (1945).

*Third*, as multiple courts in this jurisdiction have concluded in the 1252(e)(3) context, even if injunctive relief is not barred, that does not mean the court should issue an injunction. *See O.A. v. Trump*, 404 F. Supp. 3d 109, 153-54 (D.D.C. 2019) (concluding, even in a class-action case involving some of the jurisdictional provisions at issue in this case, that vacatur was sufficient); *L.M.-M.*, 442 F. Supp. 3d at 24 (observing that § 1252(e)(3) "contemplates that courts may issue declaratory judgments relating to the 'implementation of' the expedited removal provisions," and rejecting request for injunctive relief). The normal rule in cases challenging agency action is that the challenged policy is vacated, or set aside. *Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998). Indeed, the Supreme Court has cautioned that a district court vacating agency action under the APA should not issue an injunction unless doing so would "have [a] meaningful practical effect independent of its *vacatur*." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010) (emphasis added). This is because "[a]n injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course" or where "a less drastic remedy ... [is] sufficient to redress" the plaintiffs' injury. *Id*. Here, vacatur of the guidance and

training documents and of Plaintiffs' individual orders of expedited removal provides Plaintiffs all the relief they are entitled to and cures any injury they may be suffering. *See L.M.-M.*, 442 F. Supp. 3d at 24. *Cf. O.A.*, 404 F. Supp. at 153-54.

*Grace* is not to the contrary. *Grace* held that neither § 1252(e)(1) nor (f) *themselves* bar a court from issuing an injunction directed at *policies* implementing section 1225(b)(1), as opposed to the statute itself. 965 F.3d at 907-08. But the D.C. Circuit was clear that the scope of the remedies available to the district court depends on *why* the court finds the agency material unlawful. *Id.* If the court's decision rests on the agency material being "contrary to law" under § 1252(e)(3)(A)(ii), then the court may consider issuing an injunction among other appropriate remedies. *Id.* at 908. If the court's "decision rests on the agency's failure to satisfy the APA's 'requirement of reasoned decisionmaking,'" then the agency remains free to "attempt[] to remedy deficiencies in [its] explanations for these challenged policies and reissue[e] them." *Id.* (cleaned up). This is the same remedy as in any other APA case. *See Shays v. Fed. Election Comm'n*, 414 F.3d 76, 112 (D.C. Cir. 2005), *quoted in Grace*, 965 F.3d at 908. *Grace* did not state that the APA in such a situation requires an injunction, instead saying only, "unlike the district court, which in addition to finding the condoned-or-completely-helpless standard and choice-of-law policy arbitrary and capricious, *enjoined them as contrary to law*, *we have not reached the latter issue*." 965 F.3d at 908 (emphasis added). *Grace* explicitly vacated that injunction—as it had to, given the agency's ability to rectify the issues giving rise to the arbitrary or capricious holding. *Id.*[11]

---

[11] Defendants preserve for appellate review the argument that the INA strips the court of jurisdiction to issue any injunction. Section 1252(a)(2)(A) provides that "[n]otwithstanding any other provision of law (statutory or nonstatutory), ... no court shall have jurisdiction" over matters "relating to section 1225(b)(1)" other than "as provided in subsection (e)." Section 1252(e)(1) provides that "no court may—(A) enter declaratory, injunctive, or other equitable relief in any

Nor could *Grace* have held that an injunction is always required, given the clear standards for injunctive relief, which is an extraordinary remedy. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008). Under those standards, Plaintiffs are not entitled to an injunction against the guidance or training materials, because setting aside their removal orders and vacating the policies will mean they would not be subject to the expedited removal—and the associated guidance—again. They therefore cannot show any likelihood of being subject to the policies again..

*Finally*, Plaintiffs request that this Court vacate their credible fear denials and any expedited removal orders issued to them. Mot. 40. *Grace* has clarified the Court's options for remedies. But in no event, and for no claims, should any relief with respect to removal orders themselves extend beyond the Plaintiffs here, a principle of law underscored by the recent decision in *L.M.-M. See L.M.-M.*, 442 F. Supp. 3d at 37 (individuals absent from challenge "are not parties to this case," and thus are "beyond this Court's jurisdiction" with respect to relief directed at removal orders). Indeed, section 1252(e)(1)(B) prohibits "certify[ing] a class under Rule 23." As this Circuit has explained, that means Congress did not "intend[] to permit actions on behalf of a still wider group of aliens, actions in which no class representative appears as a party and the plaintiffs are unconstrained by the requirements of [Rule] 23." *AILA II*, 199 F.3d at 1359, 1364.

---

action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) of this title except as specifically authorized in a subsequent paragraph of this subsection." As to section 1252(e)(3), the sole remedy authorized is a "determination[]."Furthermore, section 1252(f) provides that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions part IV of this subchapter other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." The "notwithstanding any other provision of law" and "[r]egardless of the nature of action or claim" clauses encompass *any* statute or claim, including an APA claim. Section 702 provides that "[n]othing herein ... confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." Section 1252 is such a statute.

44

But any relief beyond vacatur of the policies at issue and the removal orders of the Plaintiffs reaches the removal orders of hundreds of thousands of aliens "none of whom are parties to the lawsuit," and "unconstrained by the requirements" of Rule 23. *Id.* at 1364; *see also Grace v. Whitaker*, 344 F. Supp. 3d 96, 144 n.31 (D.D.C. 2018) (rejecting retroactive injunctive relief invalidating non-parties' removal orders given section 1252(e)(1)(B)). Such a request for relief also effectively requests that this Court review their negative credible fear determinations, which is explicitly forbidden by statute. Section 1252(e)(3)(A) limits jurisdiction to determination of the validity of regulations and written policies that implement section 1225(b) by establishing expedited removal. Thus, plainly not all "determinations under section 1225(b)" are reviewable through section 1252(e)(3). And if there could be any doubt, then—critical here—credible-fear determinations are *expressly* carved out. In 8 U.S.C. § 1252(a)(2), titled "Matters not subject to judicial review," Congress provided that, "[n]otwithstanding any other provision of law," "no court shall have jurisdiction to review" "the application of" section 1225(b)(1) "to individual aliens, including the determination made under section 1225(b)(1)(B) [*i.e.*, a credible-fear determination]." 8 U.S.C. § 1252(a)(2)(A)(iii); *compare id. with id.* § 1252(a)(2)(A)(i), (ii), & (iv) (each allowing for review under section 1252(e) for certain *other* types of claims related to section 1225(b)(1)). Thus, Congress squarely prohibited the district court from using section 1252(e)(3) to exercise jurisdiction to review the credible-fear "determinations" concerning Plaintiffs.

For all these reasons, if the Court grants injunctive relief, that relief must be limited to the actual Plaintiffs in this case over which the court has subject-matter jurisdiction.

## CONCLUSION

For these reasons, the Court should grant summary judgment for Defendants and deny Plaintiffs' motion for summary judgment.

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Assistant Director

*s/Lauren C. Bingham*
LAUREN C. BINGHAM
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 616-4458
Email: Lauren.C.Bingham@usdoj.gov

CHRISTINA P. GREER
Senior Litigation Counsel

SARAH K. PERGOLIZZI
Trial Attorney

Dated: October 2, 2020                    *Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

S.A.P., *et al.*,

      Plaintiffs,

v.

WILLIAM BARR, Attorney General, *et al.*,

      Defendants.

Civil Action No. 1:19-cv-3549

**[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION**

**FOR SUMMARY JUDGMENT**

Before the Court are Plaintiffs' and Defendants' cross-motions for summary judgment
pursuant to Federal Rule of Civil Procedure 56, their oppositions, and replies in support. Having
considered the motions, the oppositions thereto, any reply, and oral argument, if any, the Court
hereby DENIES Plaintiffs' Motion for Summary Judgment and GRANTS Defendants' Motion
for Judgment Summary Judgment in its entirety.

Dated: _____

_____

Hon. Rudolph Contreras

United States District Judge